UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO.: 4:19-cv-10172-KMM

DUANE DOZER,

      Plaintiff,

vs.

COKA VENTURES, LLC, *in personam*, and
S/F *BAD HABIT*, a 1989 model 45' Viking
sport fishing vessel bearing Hull Identification
Number VKY45169I889, and documented as
U.S.C.G. Official Number 941674, her engines,
tackle, apparel, furniture and appurtenances,
*in rem*,

      Defendants.

_____/

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(a), Plaintiff, Duane Dozer, moves for partial summary judgment on Defendant, CoKa Ventures, LLC's, liability for failure to provide seaman Dozer with prompt medical treatment for his work-related back injury, and failure to provide maintenance and cure, and shows:

## OVERVIEW

CoKa Ventures, LLC ("CoKa") owns *Bad Habit*, a 45-foot Viking sport fishing vessel, which is used for fishing charters in the Florida Keys. Duane Dozer, a 52-year old boat captain, was employed by CoKa Ventures, LLC under a written five-year contract to serve as captain of the *Bad Habit* at an annual salary of $70,000.00. On Friday, July 12, 2019, Dozer was crawling around *Bad Habit's* engine room searching for an oil leak when he severely herniated his L4-L5

disc.  On Monday, July 15, 2019, Dozer reported his injury to CoKa's manager, Karen Sobotka. On July 18, 2019, Dozer asked CoKa to provide him with medical care.

During July 18 – 22, 2019, Dozer repeatedly asked CoKa to provide him with medical care. On July 22, 2019, Dozer informed CoKa he was losing feeling in his shin and foot and again requested his employer's help to see a doctor.  CoKa responded by informing Dozer it was not required to carry workers' compensation insurance and that he was on his own.

On July 24, 2019, Dozer went to a family friend, Amber Rule, ARNP, for a medical examination to check out his back injury.  This was the best Dozer could do because he did not have medical insurance or the financial resources to obtain care.  Ms. Rule examined Dozer and determined he had a significant lumbar spine injury with resulting foot drop that required specialized medical care.  She arranged for Dozer to get a lumbar MRI scan on an expedited basis and referred him to a neurosurgeon, Dr. Fabio Roberti, at the Cleveland Clinic Indian River Hospital.  Ms. Rule also issued a letter explaining why Dozer needed medical treatment for his back injury and that he was unfit for duty due to a "foot drop."  Mr. Dozer immediately forwarded Rule's July 24th letter to CoKa's manager.

Instead of providing the needed maintenance and cure, CoKa sent a letter terminating Dozer's employment on July 25, 2019 and asked him to sign a general release giving up all his rights as an injured seaman in need of medical treatment.  CoKa's termination letter and release document were prepared by CoKa's labor lawyer, Lori Adelson.  Either CoKa's managers did not inform their labor lawyer about Dozer's work-related back injury and his demand for medical care, or alternatively, the lawyer advised them about maintenance and cure and they decided to take a chance and trick Dozer to sign a release.  Either way, CoKa's actions toward Dozer exhibit an

intentional or willful disregard of its obligation to provide Dozer with maintenance and cure.  Mr. Dozer did not sign the proffered release.

On July 31, 2019, Dozer was seen by neurosurgeon Dr. Fabio Roberti.  Dr. Roberti examined Dozer and the MRI scans of his lumbar spine.  Dr. Roberti opined the L4-L5 disc was severely herniated on the right side with a large, extruded disc fragment exerting pressure on the L4-L5 nerves.  Dr. Roberti's physical examination of Dozer confirmed he had significant weakness, numbness and tingling on the lateral aspect of the right leg and dorsum of the foot.  Dr. Roberti recommended surgery be performed "as soon as possible" to remove the disc material and relieve the pressure exerted on Dozer's right L4-L5 nerves.  Dr. Roberti opined that Dozer's prognosis would be better if a prompt decompression were performed to reverse the foot drop.  Dr. Roberti would have performed surgery on Dozer's back within 24 hours of when financial arrangements were made with the hospital.

Mr. Dozer was dependent upon his employer to make the necessary arrangements for his immediate back surgery because he did not have the financial means to do so or health insurance. Mr. Dozer sought legal assistance from James Stroup, a Florida Board Certified Admiralty lawyer and provided him a copy of Dr. Roberti's July 31, 2019 progress notes.  Reading Dr. Roberti's progress notes and after speaking with Dozer, it was clear that Dozer's injury required immediate back surgery.  On July 31, 2019, attorney Stroup sent an e-mail to CoKa's managers, Sobotka and Hutzler, demanding maintenance and cure for Dozer's back injury.  Mr. Stroup informed them of Dr. Roberti's recommendation for immediate back surgery and advised that Dozer wanted surgery the next day, August 1, 2019.  Mr. Stroup also provided CoKa's managers with a copy of Dr.

Roberti's July 31, 2019 progress notes that explained Dozer's injury and the urgent need to remove the extruded L4-L5 disc to relieve the pressure from the nerves causing the right foot drop.

On August 1, 2019, one of CoKa's lawyers, Lori Adelson, sent an e-mail to attorney Stroup advising she would start to investigate the matter. Because of the lack of responsiveness from CoKa for Dozer's immediate need for back surgery, Stroup e-mailed Adelson and explained the employer's obligations to provide prompt medical treatment for Dozer's back injury under the governing general maritime law.

On August 2, 2019, Stroup received a telephone call from CoKa's insurance agent, William Coats, concerning Dozer's back claim. Further to that conversation, Stroup sent an e-mail to Coats regarding the details about Dozer's back injury and Dr. Roberti's recommendation for immediate surgery. Mr. Stroup informed CoKa's insurance agent that Dozer's prognosis would deteriorate if there was further delay in providing him surgery, since the injury happened on July 12, 2019.

CoKa's underwriter, Aspen Syndicate 4711, appointed attorney Marlin Green of Brown Sims to defend CoKa on August 2, 2019. On August 5, 2019, Stroup sent an e-mail to CoKa's counsel inquiring about the status of arranging for Dozer's maintenance and cure. On August 6, 2019, Stroup sent a follow-up e-mail to CoKa's counsel inquiring about payment arrangements for Dozer's back surgery. On August 7, 2019, Stroup called and left a message with CoKa's counsel inquiring about the status of arranging Dozer's back surgery. On August 8, 2019, Stroup sent another follow-up e-mail to CoKa's counsel asking about the status of making necessary payment arrangements to enable Dozer to get the prescribed back surgery. On August 9, 2019, Stroup sent an e-mail to CoKa's counsel complaining about the delay in making the necessary arrangements to enable Dozer to get the needed back surgery.

4

On August 15, 2019, Dozer's wife, Karrie, sent an e-mail directly to CoKa's underwriter inquiring about the status of arranging for Dozer's immediate surgery. On August 16, 2019, Shaun Packman, Aspen's representative, sent a reply e-mail to Kerri Dozer advising her that the claim was in the hands of Mr. Green who was appointed as the "TPA." A TPA is a third-party administrator who is appointed to handle the administration of an injured crew member's maintenance and cure.

On August 21, 2019, Stroup sent an e-mail to Green, who serves as both defense counsel and third-party administrator, inquiring about the status of making payment arrangements for Dozer's back surgery. On August 27, 2019, Stroup again sent a letter to Green asking about the status of arranging for Dozer's surgery.

On September 10, 2019, the third-party administrator, Green, sent a check for $30,340.20 to Cleveland Clinic Indian River Hospital to pre-pay for Dozer's necessary back surgery. No explanation was given about why CoKa did not pre-pay Cleveland Clinic sooner so Dozer could get the back surgery as soon as possible as Dr. Roberti urged. No explanation was given about why Aspen Syndicate 4711 did not wire transfer the money directly to Cleveland Clinic to avoid further delay with the check clearing.

After the third-party administrator's check cleared, on September 18, 2019, Dr. Roberti performed a right L4-5 laminectomy with partial facetectomy, foraminotomy and discectomy on Dozer's lumbar spine. The necessary back surgery took place more than nine weeks after Dozer reported his work-related back injury and requested medical treatment from CoKa. Despite CoKa's non-delegable duty to promptly investigate and provide maintenance and cure, the employer took no further action after August 1, 2019 when attorney Adelson said she would

"investigate the matter."  Indeed, Sobotka testified at her deposition that CoKa merely left the matter in the hands of its insurer, Aspen, and took no further action to investigate or provide medical treatment.

On October 21, 2019, Dr. Roberti prescribed an EMG test for Dozer, which was scheduled for November 5, 2019.  On October 21, 24, and 28, 2019, Stroup sent e-mails to the third-party administrator, Green, about the prescribed EMG test so the TPA could make the necessary pre-payment so it would be performed.  The November 5, 2019 EMG test was not performed because the necessary pre-payment was not made by CoKa or the TPA.

Dr. Roberti opines that Dozer should have received back surgery as soon as possible to relieve the pressure from the L4-L5 nerves.  Had CoKa and/or its insurer, Aspen, provided prompt medical care for Dozer's back injury, his recovery would have been much better.  Unfortunately, Dozer now has a permanent right foot drop and chronic back/leg pain because the surgery was not promptly provided as required by law.

On June 2, 2020, another lumbar MRI scan was performed on Dozer.  These scans indicated there was either postoperative scarring or recurrent disc herniation at L4-L5.  On June 11, 2020, Ryan Revels, D.C., performed NCV and EMG tests on Dozer's lumbar spine and legs.  These studies showed Dozer has neuropathy of his right leg nerves.  On August 3, 2020, additional lumbar MRI scans, with and without contrast, were conducted on Dozer's back.  Dr. Joanne Wernicki, neuroradiologist, read the scans and opined Dozer had postoperative changes at L4-L5 with post-surgical scarring but no recurrent disc herniation.

Dozer's treating neurosurgeon, Dr. Juan Uribe, examined Dozer, reviewed the MRI scans, and the results of the nerve conduction study on September 2, 2020.  Dr. Uribe did not believe Dozer had a recurrent herniated disc and additional back surgery was not necessary.

## WHAT THE EXPERTS SAY

Dr. Roberti, Dozer's treating neurosurgeon, testified:

> Q.  What was your diagnosis of Duane Dozer's condition on July 31, 2019?
>
> A.  He had a severe right L5 radiculopathy with pain, numbness and significant weakness due to a right L4-L5 severe disc herniation.  (DE 39-1, page 17, lines 8 – 12).
>
> *   *   *
>
> Q.  As far as your prescription, did you prescribe any surgery for Mr. Dozer on July 31, 2019?
>
> A.  Yes, we recommended a right L4-L5 laminectomy, foraminotomy and discectomy, which is a surgery that we commonly perform for this condition.  (DE 39-1, page 18, lines 18 – 24).
>
> *   *   *
>
> Q.  Am I correct in understanding you were prescribing the back surgery be done as soon as possible on Mr. Dozer?
>
> A.  Correct.
>
> Q.  Why is that?
>
> A.  In light of the severe weakness with the nerve compression that was documented on the MRI, which was consistent with the neurological examination, I felt that a prompt decompression would give the best chance for a meaningful recovery.  And that's consistent with the medical science that is available for us at this time with the medical evidence that we have. (DE 39-1, page 20, lines 9 – 22).
>
> *   *   *
>
> Q.  When you performed back surgery on September 18, 2019, you were able to actually put your own eyes on the injury that was inside of Mr. Dozer's spine?
>
> A.  Correct.

7

Q.  And your personal visual observation, did that confirm the diagnosis you reached back on July 31, 2019 about a right sided herniated disc between the L4 and L5 vertebrae?

A.  Correct.  There was a large disc herniation compressing the nerve root at that level.

Q.  Was the right L5 nerve cut when you looked at it during the surgery on September 18, 2019?

A.  No.

Q.  It was merely compressed from the herniated disc material?

A.  Correct.

Q.  Were you able to successfully remove the herniated disc material and relieve the pressure on Mr. Dozer's L5 nerve on September 18, 2019?

A.  Yes, correct.  We were able to remove all the fragments present and obtain a good decompression.  (DE 39-1, page 24, line 11 – page 25, line 10).

On September 2, 2020, Dr. Uribe determined Dozer has chronic neuropathy involving his right L4 and L5 nerves *likely associated to delay in treatment for a herniated lumbar disc.*  Dr. Uribe diagnosed Dozer with a right foot drop and chronic pain.  In other words, Dr. Uribe opines that Dozer probably would have regained use of his right foot and not developed chronic pain had he received prompt surgery.

On September 30, 2020, Dr. Craig Lichtblau, a board-certified physiatrist, performed a comprehensive medical examination of Dozer, including a review of all the medical records and diagnostic scans.  Dr. Lichtblau opines in part:

* * *

After obtaining a history directly from the patient, performing a physical examination, reviewing voluminous medical records, it is my medical opinion as a Board Certified Physiatrist that ***this patient had a suboptimal result to***

8

*surgery secondary to a delay in appropriate surgical treatment.* (Emphasis added).

After the maritime accident on July 12, 2019, the patient complained of severe pain and weakness in his right lower extremity. The patient was evaluated on July 24, 2019 and demonstrated right foot drop. He had an MRI of his lumbar spine on July 26, 2019 which demonstrated a large, extruded disc fragment at his L4-L5 spinal level. The patient did not receive surgical intervention until September 18, 2019.

*In my opinion if this patient had his MRI in close proximity to the time he started complaining of severe onset of excruciating pain with extremity weakness and received appropriate surgical treatment in close proximity to the MRI results, he would have had an optimal surgical result.* (Emphasis added). (Dr. Lichtblau's Summary Report at DE 32-1, page 88 of 304).

Put simply, Dr. Lichtblau opines with certainty that Dozer would have regained foot function and avoided chronic pain had CoKa provided him with prompt back surgery.

Dozer's expert, attorney Stuart Platt, opines that CoKa breached its duty to promptly investigate Dozer's back injury and it failed to timely provide surgery. In addition, Platt opines that defense counsel should not serve as the third-party administrator because there is an inherent conflict in defending the employer, CoKa, and administering the seaman's medical care.

## MEMORANDUM OF LAW

At the time Dozer injured his back working in *Bad Habit's* engine room on July 12, 2019, the vessel was documented with the U.S. Coast Guard as Official Number 941674. As a sport fishing vessel used in the charter fishing trade, there is no doubt *Bad Habit* is a "vessel." Title 1 U.S.C. § 3; *Stewart v. Dutra Construction Co.,* 543 U.S. 481, 125 S. Ct. 1118, 160 L.Ed. 2d 932 (2005).

CoKa employed Dozer to serve as captain of *Bad Habit* for a five-year period beginning August 26, 2017. CoKa paid for Dozer's cell phone, which had the charter fishing business phone number, and expected him to answer charter inquiries and respond to the vessel's needs 24/7. Mr.

Dozer injured his back working in *Bad Habit's* engine room on July 12, 2019.  Mr. Dozer was a "seaman" at the time he was injured because:  (1) his duties contributed to the function of the vessel *Bad Habit*; and (2) he had a substantial connection to *Bad Habit* in terms of duration and nature.  *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368, 115 S. Ct. 2172, 132 L.Ed.2d 314 (1995); *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991).  Given the facts, CoKa's manager, Colin Hutzler, admitted during his deposition that Dozer was a Jones Act seaman.  (Hutzler deposition at DE 43-1, page 90, lines 10 – 18).

Seamen "are emphatically the wards of the admiralty" courts because they are by the peculiarity of their lives liable to sudden sickness from change of climate, exposure to perils, and exhausting labor.  *Chandris*, *supra*, 515 U.S. at 354-55 citing *Harden v. Gordon*, 11 F.Cas. 480, 485, 483 (No. 6,047) (CC Me. 1823).

When a seaman is injured while in the service of the vessel, the owner must provide him with maintenance and cure.  *Aguilar v. Standard Oil Co.,* 318 U.S. 724, 730, 63 S.Ct. 930, 933-34, 87 L.Ed. 1107 (1943); *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 527-28, 58 S.Ct. 651, 82 L.Ed. 993 (1938); *Garay v. Carnival Cruise Lines, Inc.*, 904 F.2d 1527, 1529-30 (11th Cir. 1990)l *Hurtado v. Balerno Int'l Ltd.,* 408 F.Supp.3d 1315, 1326, 1329-30 (S.D. Fla. 2019).  Maintenance is an amount provided the seaman for support while he is not fit to work.  *Id.*  Cure is the owner's provision of medical treatment to the injured seaman.  *Id.*  Even if the seaman is injured through his own negligence, he does not forfeit his right to maintenance and cure.  *Garay, supra*, 904 F.2d at 1529 citing *Aguilar, supra,* 318 U.S. at 730.  If the vessel owner fails to give the seaman maintenance and cure, then the seaman can sue the owner for compensation for the suffering and for the physical injury which follow when the failure to give maintenance and cure aggravates the

injury.  *Hurtado, supra,,* 408 F.Supp.3d at  1331 citing *Hines v. J.A. LaPorte, Inc.,* 820 F.2d 1187, 1190 (11th Cir. 1987).

The Jones Act, Title 46 U.S.C. § 30104, which incorporates the Federal Employers Liability Act, Title 45 U.S.C. §§ 51 - 60, provides a cause of action in negligence for any seaman injured in the course of his employment.  *Chandris*, *supra*, 515 U.S. at 354.  A vessel owner has a non-delegable duty to provide prompt and adequate medical care to its seamen.  *De Zon v. American President Lines,* 318 U.S. 6060, 667, 63 S.Ct. 814, 87 L.Ed. 1065 (1943).  Thus, a vessel owner is directly liable to its seaman under the Jones Act when it fails to provide proper medical care.  *Central Gulf S.S. Corp. v. Sambula*, 405 F.2d 291, 298-99 (5th Cir. 1968).

A vessel owner's failure to provide maintenance and cure not only gives rise to a claim for maintenance and cure, but it also supports a cause of action under the Jones Act.  *Atlantic Sounding Co. v. Townsend,* 557 U.S. 404, 415-16, 129 S.Ct. 2561, 174 L.Ed.2d 382 (2009) (The Jones Act created a statutory cause of action for negligence, but it did not eliminate pre-existing remedies available to seaman for the separate common-law cause of action based on a seaman's right to maintenance and cure); *Garay, supra*, 904 F.2d at 1532-33; *Sambula, supra,* 405 F.2d at 299.  To summarize, Dozer may recover damages from CoKa under general maritime law for failure to provide maintenance and cure or under the Jones Act for negligent failure to provide prompt and adequate medical care.  *Atlantic Sounding Co., supra,* 557 U.S. at 415-16;  *Sambula*, *supra* at 405 F.2d at 299 (5th Cir. 1968); *Hurtado, supra,,* 408 F.Supp.3d at  1331 citing *Hines v. J.A. LaPorte, Inc.,* 820 F.2d 1187, 1190 (11th Cir. 1987).

CoKa had non-delegable duties to promptly investigate Dozer's need for back surgery and timely provide him the necessary surgery to decompress the L4 – L5 nerves.  *Vaughn v. N.J.*

*Atkinson,* 369 U.S. 527, 530-31 (1962).  Breach of these duties renders CoKa liable for Dozer's

damages.  See *Garay v. Carnival Cruise Lines, Inc.*, 904 F.2d 1527, 1529-30 (11th Cir. 1990); and

*Hurtado v. Balerno Int'l Ltd.,* 408 F.Supp.3d 1315, 1326, 1329-30 (S.D. Fla. 2019).

    A vessel owner is liable for the injuries negligently inflicted on its employees by its agents.

*Hopson v. Texaco, Inc.,* 383 U.S. 262, 263 (1966).  The word "agents" is given an accommodating

scope, requiring only that the employee's injury be caused in whole or in part by the fault of others

performing, under contract, operational activities of the employer.  *Id.*  Thus, a vessel owner is

vicariously liable for the negligence of its agents it chooses to provide maintenance and cure.  *Id.;*

*De Zon, supra*; *Sambula, supra.*  The failure CoKa, in the first 19 days post-incident, and its

insurer, in not securing the needed surgery for 68 days is not prompt when viewed against Dr.

Roberti's admonishment that surgery be performed "as soon as possible."

    CoKa rejected Dozer's request for medical treatment on July 22, 2019.  When Dozer's

lawyer sent an e-mail demanding maintenance and cure on July 31, 2019, CoKa turned the matter

over to its underwriter, Aspen Syndicate 4711, and the insurer's appointed TPA, Brown Sims, for

further handling.  Aspen and the TPA further delayed Dozer's back surgery by not prepaying the

hospital for more than six weeks.  CoKa's rejection of Dozer's request for medical care and its

insurer's delay in paying the hospital caused over a nine week delay in Dozer getting surgery.

Dozer's treating physicians, Roberti and Uribe, opined time was of the essence to remove the

herniated disc to relieve the pressure exerted on the L4-L5 nerves.  Dr. Uribe opines that Dozer

has chronic neuropathy involving the right L4 and L5 nerve roots likely caused by the delay in

treatment for the herniated disc.  Dr. Lichtblau opines with certainty that Dozer would have

obtained an optimal recovery if he had surgery in close proximity to the MRI results taken soon

after the accident.  Both Drs. Uribe and Lichtblau opine that Dozer has a right foot drop and chronic

pain because of the delay in providing Dozer with prompt surgery.

A seaman's burden of proof concerning causation under a Jones Act negligence claim is

very light, even featherweight.  *Nichols v. Barwick*, 972 F.2d 1520, 1522 (11 Cir. 1986).  Stated

differently, Jones Act claims involve a less demanding standard of causation: "causation may be

found if the defendant's acts or omissions played any part, no matter how small, in bringing about

the injury."  *McClow v. Warrior Gulf Nav. Co.,* 842 F.2d 1250, 1251 (11th Cir. 1988).

In *Sentilles v. Inter-Caribbean Shipping Corp.,* 80 S. Ct. 173, 175 (1959), a seaman's

dormant tuberculosis was aggravated by a fall on the ship.  The seaman's doctor testified the effect

of an accident like the seaman's might cause the dormant tuberculosis to become active. The

employer argued the seaman had not submitted sufficient evidence to justify the jury's conclusion

the accident caused the activation of the seaman's tuberculosis.  The Supreme Court held:

> "**The jury's power to draw the inference that the aggravation of
> [the seaman's] tubercular condition...was in fact caused by the
> accident, was <u>not impaired by the failure of any medical witness to
> testify that it was in fact the cause.</u>**  Neither can it be impaired by the
> lack of medical unanimity as to the respective likelihood of the potential
> causes of the aggravation, or by the fact that other potential causes of
> the aggravation existed and were not conclusively negated by the
> proofs.  The matter does not turn on the use of a particular form of words
> by the physicians in giving their testimony.  **The members of the jury,
> not the medical witnesses, were sworn to make a legal
> determination of the question of causation.**  They were entitled to take
> all the circumstances, including the medical testimony into
> consideration...." (Emphasis added).

In *Central Gulf S.S. Corp. v. Sambula*, 405 F.2d 291, 301 (5th Cir. 1968) a seaman's eye

was injured while on shore leave.  The seaman lost his sight in the injured eye.  He sued his

employer for Jones Act negligence alleging he lost his sight because his employer failed to provide

13

prompt and adequate medical care.  The employer argued the injured seaman could not recover unless he affirmatively showed that proper medical treatment would have, as a reasonable medical probability, prevented blindness.  The Fifth Circuit Court, while citing to the Supreme Court's *Sentilles* decision, held that:

> "...**Assuming that Sambula's witnesses only testified that there was a <u>possibility</u> that sound opthalmological regimen would have saved the eye, the evidence still would have been <u>sufficient</u> for the trier of fact to find that the negligent treatment led to blindness."**  (Emphasis added).  *Id.*

CoKa's managers, Sobotka and Hutzler, are highly educated having obtained four year college degrees from Vanderbilt University and Colby College, respectively.  CoKa's managers had ongoing relationships with two different lawyers, Lori Adelson and Andy Plyler, which they could have easily turned to for advice regarding Dozer's work-related back injury upon his request for medical care.  Furthermore, CoKa's managers could have simply called their insurance agent, William Coats, to report Dozer's shipboard injury and to find out if the $1 million crew liability insurance covered Dozer's claims.  CoKa did not make <u>any</u> effort to prepay the hospital to allow Dozer to obtain prompt back surgery as recommended by Dr. Roberti, the treating neurosurgeon.  CoKa's non-delegable duty to provide Dozer with prompt surgery does not allow it to merely turn the matter over to its Lloyd's insurance syndicate, Aspen, and ignore the injured seaman.  The behavior of CoKa and its agents regarding Dozer's demand for immediate back surgery, as prescribed by Dr. Roberti, demonstrates CoKa breached its non-delegable duties to investigate Dozer's injury and provide him prompt medical treatment.  Mr. Dozer's treating physician's opinions and expert medical opinions to show CoKa's failure to provide prompt back surgery caused a permanent right foot drop and chronic pain for which he should be justly compensated.

WHEREFORE, based on competent, substantial record evidence this Court can enter partial summary judgment for Plaintiff, Duane Dozer's, Jones Act negligence claim for failure to promptly treat his back injury as well as maintenance and cure.

Dated:  November 24, 2020.

Respectfully Submitted,

By: */s/ Farris J. Martin III*
     FARRIS J. MARTIN III
     Florida Bar No. 879916
     JAMES W. STROUP
     Florida Bar No. 842117
     **STROUP & MARTIN, P.A.**
     *Attorneys for Plaintiff*
     119 Southeast 12th Street
     Fort Lauderdale, Florida 33316
     Telephone: (954) 462-8808
     E-Mail: fmartin@strouplaw.com
     E-mail: jstroup@strouplaw.com
     *Attorneys for Plaintiff, Duane Dozer*

15

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with this Court's CM/ECF docketing system this 24th day of November 2020 and that it is being served via CM/ECF on te counsel of record shown on the Service List.

By:   _/s/ Farris J. Martin III_____
FARRIS J. MARTIN III
Florida Bar No. 879916

## SERVICE LIST

Marlin K. Green, Esq.
Matthew M. Ferman, Esq.
Brown Sims, P.C.
4000 Ponce de Leon Boulevard, Suite 630
Coral Gables, Florida 33146
Telephone: (305) 274-5507
Facsimile: (305) 274-5517
E-Mail:  mgreen@brownsims.com
E-Mail:  mferman@brownsims.com
*Attorneys for Defendants CoKa Ventures, LLC,*
*and S/F Bad Habit*

16