UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO.: 4:19-cv-10172-KMM

DUANE DOZER,

    Plaintiff,

vs.

COKA VENTURES, LLC, *in personam*, and
S/F *BAD HABIT*, a 1989 model 45' Viking
sport fishing vessel bearing Hull Identification
Number VKY45169I889, and documented as
U.S.C.G. Official Number 941674, her engines,
tackle, apparel, furniture and appurtenances,
*in rem*,

    Defendants.
_____/

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS
IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1(a), Plaintiff, Duane Dozer, files this Statement of Material Facts in support of his Motion for Partial Summary Judgment.

1. CoKa Ventures, LLC ("CoKa") owns *Bad Habit*, which is a 45-foot Viking sport fishing vessel documented with the U.S. Coast Guard with Official Number 941674. (See the admission created by ¶ 6 of the Verified Amended Complaint (DE 23) and Defendant's Answer (DE 30) thereto at ¶ 6; Colin Hutzler's deposition at DE 43-1, page 7, line 20 through page 8, line 6, and page 9, lines 9 – 15).

2. Karen Sobotka and Colin Hutzler each own 50% of CoKa and share the company's management responsibilities. (Hutzler deposition at DE 43-1, page 7, line 10 through page 8, line 10; page 9, lines 9 – 15; page 10, lines 7 – 9; page 18, lines 1 – 4; and Karen Sobotka's deposition

at DE 44-1, page 14, lines 19 – 25).

3. On August 26, 2017, CoKa hired Dozer to serve as captain of *Bad Habit* for five years with a yearly salary of $70,000.00. The employment contract strictly prohibited Dozer from working for anyone else. (Hutzler deposition at DE 43-1, page 19, line 16 through page 20, line 10; page 29, line 9 through page 31, line 21; page 32, lines 16 – 20; Sobotka deposition at DE 44-1, page 18, line 8 through page 19, line 16; and Dozer's employment contract that is attached hereto as Exhibit "1" for ease of reference).

4. CoKa contractually required Dozer to devote his full time to CoKa's business. Dozer's duties involved maintaining the vessel, booking charters and taking clients out on fishing charters. Mr. Dozer sometimes slept aboard the vessel. When Dozer was at home he was always on call because his cell phone number was the only advertised phone number. For example, if someone called saying *Bad Habit* was taking on water, he had to leave home and go to the vessel. If a charter inquiry phone call was received, Dozer was expected to book and perform the charter. CoKa paid for Dozer's cell phone so he was always on call, 24/7. (Hutzler deposition at DE 43-1, page 32, line 16 through page 41, line 21).

5. CoKa did <u>not</u> have Dozer fill out a pre-employment health questionnaire or undergo a pre-employment medical examination before he was hired. (Sobotka deposition at DE 44-1, page 122, lines 4 – 12; and Hutzler deposition at page 20, lines 11 – 15).

6. While working for CoKa, Dozer was a Jones Act seaman serving as captain of *Bad Habit*. (See Hutzler's deposition <u>admission</u> at DE 43-1, page 90, lines 10 – 18; and see expert Stuart Platt's opinion # 2 set forth in his written report at DE 35-1).

7. On Friday, July 12, 2019, Dozer seriously injured his back while crawling around

*Bad Habit*'s engine room looking for an oil leak. (See paragraphs 2, 3 and 4 of Dozer's <u>Verification</u> to the Verified Amended Complaint at DE 23).

8. On Monday, July 15, 2018, Dozer reported his work-related back injury to CoKa's manager, Sobotka. (Sobotka deposition at DE 44-1, page 56, line 25 through page 58, line 12; Hutzler deposition at DE 43-1, page 91, lines 15 – 22; and the text messages exchanged between Dozer and Sobotka, which are attached hereto as Exhibit "2" for ease of reference).

9. On July 18, 2019, Dozer requested CoKa provide him with medical treatment. (Sobotka deposition at DE 44-1, page 58, line 14 through page 60, line 3; and the text messages exchanged between Dozer and Sobotka on July 18, 2019, which are attached hereto as Exhibit "3" for ease of reference).

10. On July 19, 2019, Dozer sent a text message to CoKa's manager, Sobotka, reminding her that the doctor's office needed a worker's compensation claim number so he could be seen on Monday, July 22, 2019. (See Exhibit "4" attached hereto for ease of reference).

11. On July 22, 2019, the following text messages were exchanged between Dozer and CoKa's manager:

<u>Dozer's text to CoKa's manager, Sobotka</u>

It's been over a week since I have had feeling in my shin and my foot due to my back injury on 7/12. I need a worker's comp claim to get an MRI to review the extent of the nerve damage.

<u>CoKa's (Sobotka's) text response</u>

I am sorry to hear that you are not feeling well. We do not have Workman's Comp. We are not required to carry Workman's Comp under Florida law. **You will have to be responsible for your own medical care.** (Emphasis added)

(See text messages attached hereto as Exhibit "5"; and Sobotka deposition at DE 44-1, page 60,

3

lines 10 – 17). In essence, CoKa rejected Dozer's request for cure on July 22, 2019. (*Id*).

12. On July 24, 2019, Dozer went to a family friend, Amber Rule, ANRP, for examination of his back injury because he did not have health insurance. Ms. Rule examined Dozer and determined he had a significant back injury with a right foot drop that prevented him from returning to work. Ms. Rule arranged for Dozer to have an MRI scan of his lumbosacral spine and to see a neurosurgeon, Dr. Fabio Roberti, at Cleveland Clinic Indian River Hospital. (See Amber Rule's July 24, 2019 letter attached hereto as Exhibit "6" for ease of reference).

13. Mr. Dozer sent a copy of Rule's July 24, 2019 letter to CoKa. (Hutzler deposition at DE 43-1, page 54, line 12 through page 55, line 15; Sobotka deposition at DE 44-1, page 81, line 10 through page 82, line 14).

14. On July 25, 2019, CoKa terminated Dozer's employment and offered him a month of wages, $6,279.58, if he signed a general release giving up all his claims, including his maintenance and cure benefits. (Sobotka deposition at DE 44-1, page 83, line 9 through page 87, line 18; Hutzler deposition at DE 44-1, page 58, line 2 through page 59, line 18; and CoKa's termination letter with proposed Confidential Separation Agreement, Waiver and Release of Claims, which is attached hereto as Exhibit "7" for ease of reference).

15. Mr. Dozer refused to sign the Confidential Separation Agreement, Waiver and Release of Claims. (Hutzler deposition at DE 43-1, page 63, lines 14 – 19).

16. On July 31, 2019, Dozer's treating neurosurgeon, Dr. Fabio Roberti ("Dr. Roberti"), examined Dozer at the Cleveland Clinic Indian River Hospital. Dr. Roberti opined in relevant part:

> Treatment
> 1. Other intervertebral disc displacement, lumbar region.

> Notes:  I reviewed an MRI of [Dozer's] lumbosacral spine…  At L4-5 there is a large right and inferiorly migrated disc herniation leading to severe lateral recess stenosis… **At this point in light of the severe foot weakness I recommend a surgical procedure of right L4-5 laminectomy, foraminotomy, discectomy** and discussed benefits, risks, alternative management and prognosis as well as timing of the surgery with the patient <u>**which are recommended to be as soon as possible**</u>… <u>**the prognosis is better if a prompt decompression is performed**</u>…. (Emphasis added).

(A copy of Dr. Roberti's July 31, 2019 Progress Notes is attached hereto for ease of reference as Exhibit "8"; and Dr. Roberti deposition at DE 39-1, page 4, line 10 through page 21, line 22).

17. Dr. Roberti would have performed surgery on Dozer within 24 hours if financial arrangements were made.  (Dr. Roberti deposition at DE 39-1, page 55, line 18 through page 56, line 9).

18. With no health insurance or the financial ability to pay for surgery, Dozer sought legal assistance immediately after his appointment with Dr. Roberti.  On July 31, 2019, attorney James Stroup sent an e-mail to CoKa's manager, Sobotka, demanding maintenance and cure for Dozer's back injury and enclosing Dr. Roberti's progress notes.  <u>Mr. Stroup informed Sobotka of Dr. Roberti's recommendation for immediate back surgery and advised her that Dozer needed surgery the next day, August 1, 2019</u>.  (James W. Stroup's report at DE 36-1, the first paragraph on pages 1 - 2, and the first full paragraph on page 4).

19. On August 1, 2019, CoKa's employment lawyer, Lori Adelson, sent an e-mail to attorney Stroup advising she would start investigating the matter.  Recognizing a lack of responsiveness for Dozer's urgent need for back surgery, Stroup e-mailed Adelson and explained CoKa's obligations to provide prompt medical treatment for Dozer's back injury under governing maritime law.  (Stroup's report at DE 36-1, pages 3 through 15).

20. On August 2, 2019, attorney Stroup received a telephone call from William Coats,

CoKa's marine insurance agent. Further to that conversation, Stroup sent an e-mail to Coats and provided him details about Dozer's back injury and Dr. Roberti's recommendation for immediate surgery. <u>Mr. Stroup also informed Coats that Dozer's prognosis would deteriorate if there was further delay in providing him surgery</u>. (*Id.*)

21. CoKa's underwriter, Aspen Syndicate 4711, appointed attorney Marlin Green, Brown Sims, to handle the matter for CoKa on August 2, 2019. (*Id*).

22. On August 5, 2019, Stroup sent an e-mail to CoKa's counsel, Green, inquiring about payment arrangements for Dozer's maintenance and cure. (Stroup's report at DE 36-1, page 6).

23. On August 6, 2019, Stroup sent a follow-up e-mail to CoKa's counsel inquiring about payment arrangements or payment guarantees for Dozer's back surgery. (*Id*).

24. On August 7, 2019, Stroup called and left a message with CoKa's counsel inquiring about the status of arranging Dozer's back surgery. (*Id.*).

25. On August 8, 2019, Stroup sent another e-mail to CoKa's counsel asking about the status of payment arrangements or guarantees for Dozer to obtain the prescribed back surgery. (Stroup's report at DE 36-1, page 7).

26. On August 9, 2019, Stroup sent an e-mail to CoKa's counsel complaining about the delay in making the necessary arrangements for Dozer to get emergency back surgery from Dr. Roberti. (*Id*).

27. On August 12, 2019, Stroup followed up with CoKa's counsel seeking an immediate update concerning the treating physician and hospital's decision on whether they would give Dozer the required surgery and medical treatment. CoKa's counsel, Green, did not respond

6

to Stroup's query. Mr. Stroup sent an e-mail on August 12, 2019 to CoKa's counsel confirming he had received no replies to his e-mails seeking status updates about payment arrangements for Dozer's medically necessary surgery. (Stroup's report at DE 36-1, page 8).

28. On August 15, 2019, Dozer's wife, Karrie, sent an e-mail directly to Yachtinsure, Aspen's agent, inquiring why no arrangements had been made for Dozer to receive immediate back surgery. (A copy of Karrie Dozer's e-mail to Aspen Syndicate 4711's agent, Yachtinsure, is attached hereto as the first page in Exhibit "9").

29. On August 16, 2019, Shaun Packman, Aspen's agent, sent a reply e-mail to Kerri Dozer advising her that the claim was in the hands of Mr. Green who was the insurer's appointed "TPA" (third-party administrator). (A copy of Packman's/Yachtinsure's August 16, 2019 e-mail to Karrie Dozer is attached hereto as the second page in Exhibit "9").

30. On August 21, 2019, Stroup sent a letter to CoKa's lawyer asking about the status of arranging Dozer's back surgery because CoKa's insurer, Aspen, appointed Green to act as the third-party administrator for Dozer's maintenance and cure. (Stroup's report at DE 36-1, pages 11 and 12).

31. On August 27, 2019, Stroup sent an e-mail letter to CoKa's lawyer/third-party administrator stating the delay game needs to end because Dozer required immediate back surgery. (Stroup's report at DE 36-1 at page 12).

32. On September 2, 2019, Rose Gustav of Cleveland Clinic Indian River Hospital contacted Mrs. Dozer to follow-up about Dozer's needed back surgery. Ms. Gustav confirmed she had not heard from CoKa's counsel since she e-mailed them a payment agreement for Dozer's surgery. (Stroup's report at DE 36-1 at page 14).

7

33. On September 10, 2019, CoKa's lawyer/third-party administrator sent a check to Cleveland Clinic Indian River Hospital to pre-pay the cost for Dozer's back surgery. (A copy of the third-party administrator's September 10, 2019 letter to Cleveland Clinic Indian River Hospital and the check to pre-pay for Dozer's back surgery is attached hereto as Exhibit "10").

34. Once the third-party administrator's check cleared into Cleveland Clinic's account, on September 18, 2019 Dr. Roberti performed a right L4-L5 hemilaminectomy with partial facetectomy, foraminotomy and discectomy on Dozer's lumbar spine. (Dr. Roberti deposition at DE 39-1, page 18, line 18 through page 27, line 11; and Dr. Roberti's Operative Report which is attached hereto as Exhibit "11" for ease of reference).

35. CoKa did not provide Dozer with back surgery for over nine weeks after he reported his work-related injury. (Dr. Roberti deposition at DE 39-1, page 24, line 1 through page 27, line 11; and see Exhibits "2", "10" and Exhibit "11" attached hereto).

36. Dr. Roberti performed a follow-up examination of Dozer on September 25, 2019. Mr. Dozer still had severe weakness of his right foot with no significant changes in motor control. (Dr. Roberti deposition at DE 39-1, page 30, line 17 through page 33, line 3; and Dr. Roberti's September 25, 2019 progress notes attached hereto as Exhibit "12" for ease of reference).

37. Dr. Roberti performed a follow-up examination of Dozer on October 16, 2019. Mr. Dozer still had the right foot drop with significant weakness. (Dr. Roberti deposition at DE 39-1, page 33, line 4 through page 34, line 12; and Dr. Roberti's October 16, 2019 progress notes attached hereto as Exhibit "13" for ease of reference).

38. On September 2, 2020, Dozer's treating neurosurgeon, Dr. Juan Uribe Villa ("Dr. Uribe"), conducted a follow-up examination of Dozer. **Dr. Uribe determined Dozer has chronic**

**neuropathy involving his right L4 and L5 nerves** *likely associated to delay in treatment for a herniated lumbar disc.*  Dr. Uribe diagnosed Dozer with a right foot drop and chronic pain.  (See Dr. Uribe's September 2, 2020 progress notes located at DE 37-1; and Dr. Uribe's deposition at DE 45-1, page 23, line 17 through page 24, line 2; and page 24, line 18 through page 25, line 1).

39. On September 30, 2020, Dr. Craig Lichtblau, a board-certified physiatrist, performed a comprehensive medical examination of Dozer, including a review of all the medical records and diagnostic scans.  Dr. Lichtblau opines in part:

\* \* \*

> After obtaining a history directly from the patient, performing a physical examination, reviewing voluminous medical records, it is my medical opinion as a Board Certified Physiatrist that ***this patient had a suboptimal result to surgery secondary to a delay in appropriate surgical treatment.***  (Emphasis added).
>
> After the maritime accident on July 12, 2019, the patient complained of severe pain and weakness in his right lower extremity.  The patient was evaluated on July 24, 2019 and demonstrated right foot drop.  He had an MRI of his lumbar spine on July 26, 2019 which demonstrated a large extruded disc fragment at his L4-L5 spinal level.  The patient did not receive surgical intervention until September 18, 2019.
>
> ***In my opinion if this patient had his MRI in close proximity to the time he started complaining of severe onset of excruciating pain with extremity weakness and received appropriate surgical treatment in close proximity to the MRI results, he would have had an optimal surgical result***.  (Emphasis added). (See Dr. Craig Lichtblau's Summary Report at page 9, which begins at page 88 of 304 in DE 32-1).

### Additional Facts Supporting Dozer's Claims

40. Mrs. Sobotka graduated from Vanderbilt University with a four-year degree. (Sobotka deposition at DE 44-1, page 98, line 10 through page 99, line 2).

41. Mr. Hutzler graduated from Colby College with a four-year degree.  (Hutzler deposition at DE 43-1, page 21, lines 12 – 24, and page 22, lines 15 – 16).

42. CoKa hired attorney Andy Plyler of Mann & Wolf, LLP to form CoKa Ventures, LLC and draft the employment agreement for Dozer. (Hutzler deposition at DE 43-1, page 10, lines 12 – 18; page 11, lines 5 – 17; page 20, lines 2 – 10; page 27, lines 9 – 25)

43. Mann & Wolf, LLP is CoKa's registered agent in the State of Florida. (Hutzler deposition at DE 43-1, page 10, line 19 through page 11, line 4). Put simply, CoKa had an ongoing relationship with Mann & Wolf, LLP such that it could turn to it for legal advice at any time. (See *id*).

44. CoKa's insurance agent is William Coats of Offshore Risk Management. Mr. Coats procured insurance for CoKa, which included $1 million in crew protection and indemnity coverage. (Sobotka deposition at DE 44-1, page 61, line 15 through page 67, line 7; and a copy of CoKa's marine insurance policy is attached hereto as Exhibit "14" for ease of reference).

45. In July 2019, CoKa had working relationships with: (a) Lori Adelson, a Florida labor lawyer; (b) attorney Andrew Plyler, Mann & Wolf, LLP; and (c) William Coats, marine insurance agent at Offshore Risk Management. (Hutzler deposition at DE 43-1, page 10, line 12 through page 11, line 17, and page 57, line 2 through page 59, line 21; Sobotka deposition at DE 44-1, page 13, line 8 through page 14, line 14; Sobotka deposition at DE 44-1, page 56, lines 2 – 14; Sobotka deposition at DE 44-1, page 87, lines 11 – 18; Sobotka deposition at DE 44-1, page 61, line 15 through page 62, line 22; and Sobotka deposition at DE 44-1, page 91, lines 5 – 14).

46. Despite being commercially sophisticated enough to employ professionals, CoKa did not consult with its lawyers or marine insurance agent about Dozer's back injury or his request for emergency medical treatment during July 15 - 31, 2019. (Sobotka deposition at DE 44-1, page 46, lines 7 – 15, and at page 67, line 20 through page 68, line 2).

47. In mid-May 2020, Dr. Roberti moved from Vero Beach, Florida to Washington, D.C. to serve as professor of neurosurgery and director of minimally invasive neurosurgery at George Washington University Hospital. (Dr. Roberti's deposition at DE 39-1, page 6, line 22 through page 7, line 5).

48. Dr. Uribe arrived at Cleveland Clinic Indian River Hospital in May 2020 with part of his practice picking up the patients who were previously being treated by Dr. Roberti. (Dr. Uribe's deposition at DE 45-1, page 5, lines 16 – 25).

49. CoKa did not retain any expert witnesses to rebut Dozer's Jones Act negligence failure to treat and maintenance and cure claims.

Dated: November 24, 2020.

Respectfully submitted,

By: /s/ Farris J. Martin III
FARRIS J. MARTIN III
Florida Bar No. 879116
JAMES W. STROUP
Florida Bar No. 842117
Stroup & Martin, P.A.
119 Southeast 12th Street
Fort Lauderdale, Florida 33316
Telephone: (954) 462-8808
E-mail: fmartin@strouplaw.com
E-mail: jstroup@strouplaw.com
*Attorneys for Plaintiff, Duane Dozer*

## **CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with this Court's CM/ECF docketing system this 24th day of November 2020 and that it is being served via CM/ECF on the counsel of record shown on the Service List.

By: */s/ Farris J. Martin III*
 FARRIS J. MARTIN III
 Florida Bar No. 879916

## **SERVICE LIST**

Marlin K. Green, Esq.
Matthew M. Ferman, Esq.
Brown Sims, P.C.
4000 Ponce de Leon Boulevard, Suite 630
Coral Gables, Florida 33146
Telephone: (305) 274-5507
Facsimile: (305) 274-5517
E-Mail: mgreen@brownsims.com
E-Mail: mferman@brownsims.com
*Attorneys for Defendants CoKa Ventures, LLC, and S/F Bad Habit*