# EXHIBIT "1"

## <u>EMPLOYMENT AGREEMENT</u>

**THIS EMPLOYMENT AGREEMENT** is dated as of August ___, 2017, by and between **CoKa VENTURES LLC**, a Florida limited liability company (hereinafter referred to as the "Employer") and **DUANE DOZER** (the "Employee").

**WHEREAS**, the Employer is engaged in the business of providing charter boat fishing in Islamorada, Florida, and related products and services; and

**WHEREAS**, the Employee is charter boat fisherman and captain qualified to perform services for the Employer; and

**WHEREAS**, Employee desires to be employed by the Employer and the Employer desires to employ the Employee on the terms, covenants and conditions hereinafter set forth.

**NOW, THEREFORE**, in consideration of the premises and the respective mutual agreements, covenants, representations and warranties herein contained, the parties hereto hereby agree as follows:

1.  <u>Recitals</u>.  The above recitals are true and correct.

2.  <u>Employment</u>.  The Employer hereby employs the Employee as charter boat fisherman and captain of Employer's business and the Employee hereby accepts employment with the Employer.  Employee shall render such services as may be required from time to time for the benefit of Employer.

3.  <u>Term</u>.  The term of this Agreement shall commence upon execution hereof (the "Commencement Date") and shall continue for a period of five (5) years (i.e., 60 months from the Commencement Date) and shall automatically renew from additional five (5) year terms until terminated as set forth in Section 9 hereof.

4.  <u>Compensation; Benefits.</u>

    (a)  <u>Salary</u>.  The Employee shall receive as compensation for all services rendered to the Employer, the salary as set forth in <u>Exhibit "A"</u> attached hereto and made a part hereof, prorated and payable at such intervals as may be determined by the Employer; provided, however, that payments shall not be less frequently than monthly.

    (b)  <u>Taxes</u>.  The Employer shall deduct and withhold all necessary social security and withholding taxes and any other similar sums required by law from the Employee's compensation.

    (c)  <u>Benefits</u>.  Employer shall provide Employee with such benefits as are set forth in <u>Exhibit "A"</u> attached hereto and made a part hereof.

5.  <u>Expenses</u>.    The Employer agrees either to pay directly or to reimburse the Employee, at the Employer's option, for only those reasonable and customary business expenses approved in writing in advance by Employer from time to time. Employee shall seek prior written

approval from Employer for any expenses exceeding $500.00 and for any expenses which are not reasonable and customary.

6. Billings.

(a) All billings, fees and charges received or realized as a result of services rendered by Employee shall belong to and be the property of the Employer. The Employee agrees to abide by the schedule of charges promulgated and modified from time to time by the Employer.

(b) Employee agrees to cooperate and lend his full assistance to Employer in the collection of any billings, fees and charges.

7. Scope of Employment.

(a) The Employee agrees that he will at all times, faithfully, industriously and to the best of his ability, experience, and talents, perform all the duties that may be required of and from him pursuant to the express and implicit terms hereof, to the reasonable satisfaction of the Employer.

(b) The Employer recognizes that professional regulatory and advisory groups have, and may from time to time, establish health, safety and other standards and requirements with regard to responsibilities of the Employee. All provisions contained herein with respect to duties and obligations of the Employee shall be strictly subject to such standards and requirements.

(c) The Employee shall devote his full time to the performance of his duties under this Agreement. Employee shall perform no services to or for any company other than Employer including, without limitation, providing consulting services.

(d) The Employee agrees to observe and comply with the rules and regulations of the Employer, as adopted by the Employer from time to time with respect to the performance of the duties of the Employee. The Employee specifically acknowledges that the Employer shall have the final authority over the acceptance or refusal of any person or entity for whom products and services shall be rendered by the Employee on behalf of the Employer. The Employee acknowledges that he has no authority to enter into any contracts that are binding upon the Employer unless such contracts or obligations are authorized by the Employer. The Employer shall have the power to direct, control and supervise the duties to be performed by the Employee, the manner of performing said duties, and the time of performing said duties.

(e) The Employee shall not at any time either during the term hereof or thereafter in any manner, either directly or indirectly, divulge, disclose or communicate to any person, firm or corporation, in any manner whatsoever any information concerning any matters affecting or relating to the business of the Employer including, but without limiting the generality of the foregoing, any of its customers, the billings, fees and charges it obtains or has obtained from rendering of its products and services, its earnings or finances, its manner of operation, its plans, processes, or other information concerning the business of the Employer and its customers. Without regard to whether all of the foregoing matters will be deemed confidential, material or important, the parties to this Agreement hereby stipulate that as between them, the same are confidential, material, and important and gravely

affect the successful conduct of business of the Employer, and the Employer's goodwill and professional reputation, and that any breach of the terms of this Section shall be a material breach of this Agreement. The foregoing shall not apply to confidential information which is otherwise made public by someone other than the Employee or the disclosure of which is compelled by a court of competent jurisdiction.

8.    <u>Paid Time Off</u>. The Employee shall be entitled to twenty-one (21) days of paid time off per year, which may be used for any purpose. Paid time off days must be used in the calendar year for which they apply, and will not carry over to any subsequent year. Employee must give Employer at least four (4) weeks written notice of any period of three (3) or more consecutive days of paid time off that Employee wishes to use and the requested paid time off days may not conflict with any trips or services which have already been scheduled by the customers of the Employer. In the event Employee shall fail to give such notice, the Employer shall have the right to deny the paid time off.

9.    <u>Termination</u>.

(a)    This Agreement may be terminated by Employer, without notice, at any time for "cause". In the event Employee shall be terminated for cause, the termination shall be effective immediately upon written notification by Employer to Employee. The term "cause" shall be for any one of the following matters:

i) Upon material violation by Employee of any of the provisions of this Agreement or the rules, policies, and/or procedures of Employer, if such violation is not cured within 3 days after written notice from Employer, or if Employee commits a similar violation within 12 months of receiving any such notice.

(ii) Upon the death or disability of Employee.

(iii) Upon the imposition of any restriction or limitation on Employee by any governmental or professional authority having jurisdiction over Employee to such extent that Employee cannot engage in the employment as contemplated under this Agreement.

(iv) Upon Employee being charged with a felony or crime of moral turpitude as defined by the applicable state laws.

(v)    Upon the failure by Employee to perform his duties in a professional, competent, ethical and moral manner, or to achieve the performance objectives and standards, all as reasonably determined by Employer, or otherwise engages in activities that would constitute a conflict of interest with Employer.

PLT 000003

(b)     This Agreement may be terminated by Employer at any time without cause; provided, however, that Employer shall provide Employee with no less than two (2) weeks prior written notice of termination.  In the event Employee shall be terminated without cause, Employee shall be paid his salary through the date of termination specified in the notice.

10.     <u>Records and Files</u>.  All records and files concerning customers of the Employer shall be the sole property of the Employer during and after the term of this Agreement.

11.     <u>Covenant Not To Compete</u>.

(a)     The following agreement on the part of Employee is hereinafter referred to as the "Restrictive Covenants", which is that during the term of this Agreement and for a period of five (5) years after the termination of this Agreement, Employee agrees that he will not, without the prior written consent of Employer, directly or indirectly, as an employee, employer, agent, principal, proprietor, partner, stockholder, consultant, director, officer, or in any other capacity: (i) provide services similar to the services provided to Employer pursuant to this Agreement, and/or engage in the business of providing chartered fishing trips or/and captaining or related products and services similar in nature to the services offered by Employer, within Monroe or Miami-Dade Counties, Florida; (ii)  call, solicit, or canvass, either for himself or any other person or firm, directly or indirectly, any of Employer's present or former customers; or (iii) entice, solicit, or induce, either directly or indirectly, any person who is employed by Employer (either as an employee or independent contractor) to leave the employ of  Employer; or (iv)  divulge, communicate, or use to the detriment of Employer, or for the benefit of any other person or entity, or misuse in any way, any proprietary or confidential information of Employer hereafter referred to.  Employee acknowledges and agrees that his position with Employer is one of trust and confidence and that he will gain access and knowledge to certain proprietary and confidential information of Employer during the term of this Agreement, including, without limitation, the identity of its customers and suppliers, its arrangements with customers and suppliers, and other technical data, methods of doing business, records, compilations of information, and specifications relating to its customers, suppliers, products and services.  All files, records, documents, specifications, computer software, and other information, related to Employer's customers or otherwise, whether prepared by Employee or otherwise coming into his possession, shall be the exclusive property of Employer and shall not be retained by Employee upon termination of this Agreement.

(b)     <u>Reasonableness of Restrictions</u>.        The parties hereto acknowledge that the Restrictive Covenants are a reasonable restraint upon Employee and further acknowledge that any violation of the Restrictive Covenants would cause irreparable harm and damages, and have a substantial detrimental effect on Employer.  Employee has carefully considered the nature and extent of the Restrictive Covenants (including, but not limited to, the time period of restriction, the geographical area of restriction, the resignation requirements, and the damages and injunctive relief provisions) and the rights and remedies conferred upon Employer under the provisions of the Restrictive Covenants, and hereby acknowledges and agrees that the same are reasonable in time and territory, are designed to eliminate competition which would otherwise be unfair to Employer, do not stifle Employee's inherent skill and experience, would not operate as a bar to Employee's sole means of support, are fully required to protect the legitimate interest of  Employer,

and do not confer a benefit upon Employer disproportionate to the detriment of Employee. In the event that any provision relating to the time period or geographic area of any restriction set forth in this Section 11 shall be declared by a court of competent jurisdiction to exceed the maximum time period or area of restriction that the court deems reasonable and enforceable, the time period or area of restriction which the court finds to be reasonable and enforceable shall be deemed to become, and thereafter shall be, the maximum time period or geographic area of such restriction.

(c)    Liquidated Damages and Injunction. Employee    agrees    that    damages resulting from a violation of the Restrictive Covenants will be impossible to ascertain and for that reason agrees that (i) Employee shall pay to Employer the sum of $20,000.00 as liquidated damages in the event of a violation of the Restrictive Covenants, and (ii) that Employer shall be entitled to an injunction without the necessity of posting bond, from any court of competent jurisdiction restraining any violation of any or all of the Restrictive Covenants either directly or indirectly and such right to injunction shall be cumulative and in addition to whatever other remedies Employer may have at law and in equity.  Employee further agrees that, if he shall violate the Restrictive Covenants, Employer will be entitled to an accounting and payment of all profits, compensation, commissions, remunerations, or benefits which Employee, directly or indirectly, has realized and/or may realize as a result of, growing out of, or in connection with, any such violation.  Employee acknowledges that this provision has been called to his attention and that he understands it is a material covenant and that without his agreement with these provisions, this Agreement would not have been entered into by Employer. Employee and Employer agree that the liquidated damages provision contained in this section is a bona fide liquidated damages provision and not a penalty or forfeiture provision. If a court of competent jurisdiction is unwilling to enforce the liquidated damages or injunction provisions of this section, then Employer shall be entitled to all other remedies available at law and in equity.

(d)    Survival.      The covenants set forth in this Section 11 shall survive the termination of this Agreement.

12.    Entire Agreement.   This Agreement represents the entire understanding and agreement between the parties with respect to the subject matter hereof, and supersedes all other negotiations, understandings and representations (if any) made by and between such parties, to the extent inconsistent herewith.

13.    Amendments.  The provisions of this Agreement may not be amended, supplemented, waived or changed orally, except by a writing signed by all parties to this Agreement.

14.    Further Assurances.  The parties hereby agree from time to time to execute and deliver such further and other transfers, assignments and documents and do all matters and things which may be convenient or necessary to more effectively and completely carry out the intentions of this Agreement.

15.    Binding Effect.  All of the terms and provisions of this Agreement, whether so expressed or not, shall be binding upon, inure to the benefit of, and be enforceable by the parties and their respective administrators, executors, legal representatives, heirs, successors and permitted assigns.  Without limiting the generality of the foregoing, any rights given or duties imposed upon the

estate of a deceased Employee shall inure to the benefit of and be binding upon the fiduciary of such decedent's estate in his or her fiduciary capacity.

16.    <u>Notices</u>.   All notices, requests, consents and other communications required or permitted under this Agreement shall be in writing and shall be (as elected by the person giving such notice) by US mail, return receipt request, overnight courier or email, addressed to each party at the following addresses:

if to Employer, to:  _____
_____
_____
Attn: _____
Email:_____

with a copy to:  Mann & Wolf, LLP
100 NE 3rd Ave., Suite 780
Fort Lauderdale, FL 33301
Email: Andrew@mannwolf.com

if to Employee, to:  _____
_____
_____
Attn:_____
Email:_____

with a copy to:  _____
_____
_____
Email:_____

hereto, or to such other address as any party may designate by notice complying with the terms of this Section.  Each such notice shall be deemed delivered (a) on the date emailed, and (b) on the date upon which the return receipt is signed or delivery is refused or the notice is designated by the postal authorities as not deliverable, as the case may be, if mailed or overnight courier.

17.    <u>Headings</u>.  The headings contained in this Agreement are for convenience of reference only, and shall not limit or otherwise affect in any way the meaning or interpretation of this Agreement.

18.    <u>Severability</u>.  If any part of this Agreement or any other Agreement entered into pursuant hereto is contrary to, prohibited by or deemed invalid under applicable law or regulation, such provision shall be inapplicable and deemed omitted to the extent so contrary, prohibited or invalid, but the remainder hereof or thereof shall not be invalidated thereby and shall be given full force and effect so far as possible.

19. <u>Pronouns</u>.  In this Agreement, the use of any gender shall be deemed to include all genders, and the use of the singular shall include the plural, wherever it appears appropriate from the context.

20. <u>Waivers</u>.  The failure or delay of any party at any time to require performance by another party of any provision of this Agreement, even if known, shall not affect the right of such party to require performance of that provision or to exercise any right, power or remedy hereunder, and any waiver by any party of any breach of any provision of this Agreement should not be construed as a waiver of any continuing or succeeding breach of such provision, a waiver of the provision itself, or a waiver of any right, power or remedy under this Agreement.  No notice to or demand on any party in any case shall, of itself, entitle such party to any other or further notice or demand in similar or other circumstances.

21. <u>Enforcement Costs</u>.  If any legal action or other proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default or misrepresentation in connection with any provisions of this Agreement, the successful or prevailing party or parties shall be entitled to recover reasonable attorneys' fees, court costs and all expenses even if not taxable as court costs (including, without limitation, all such fees, costs and expenses incident to appeals), incurred in that action or proceeding, in addition to any other relief to which such party or parties may be entitled.

22. <u>Remedies Cumulative</u>.  No remedy herein conferred upon any party is intended to be exclusive of any other remedy, and each and every such remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute or otherwise.  No single or partial exercise by any party of any right, power or remedy hereunder shall preclude any other or further exercise thereof.

23. <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

24. <u>Governing Law</u>.  This Agreement and all transactions contemplated by this Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida without regard to principles of conflicts of laws.

25. <u>Construction of Agreement and Attorney Review</u>. All of the parties to this Agreement have participated freely in the negotiation and preparation hereof and have been afforded the opportunity to review this Agreement with their respective attorneys; accordingly, this Agreement shall not be more strictly construed against any one of the parties hereto.

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Agreement as of the day and year first above written.

**EMPLOYEE:**                                    **EMPLOYER:**

**CoKa Ventures LLC,** a Florida limited
liability company

_____              By:_____
        **DUANE DOZER**                         Karen Sobotka, Manager

## <u>EXHIBIT A (TO EMPLOYMENT AGREEMENT)</u>

## <u>SALARY AND BENEFITS</u>

Salary: $70,000.00 per year.

Bonus: For each charter fishing trip that Employee captains in excess of 250 trips per year, Employee shall be entitled the following bonuses:

- Overnight Trip:        $150.00
- Full Day Trip:         $100.00
- Half Day Trip          $100.00

## ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** ("Agreement") dated this \_\_\_ day of August, 2017 between **Duane Dozer**, **Bad Habit Sportfishing Charters, Inc.**, a Florida corporation, and **Just Bumminit, LLC**, a Florida limited liability company (collectively, "Seller"), and **CoKa Ventures LLC,** a Florida limited liability company ("Buyer").

**WHEREAS,** Just Bumminit, LLC is a Florida limited liability company; and

**WHEREAS,** Bad Habit Sportfishing Charters, Inc. is a Florida corporation; and

**WHEREAS,** Seller is currently operating a fishing charter business located in Islamorada, Florida; and

**WHEREAS,** Seller desires to sell certain of its assets to Buyer; and

**WHEREAS,** Buyer desires to purchase the assets of Seller, all upon the terms and conditions hereinafter set forth.

**NOW, THEREFORE,** the parties hereto agree as follows:

1. <u>Purchase and Sale of Assets</u>.  Upon the terms and provisions of this Agreement, Buyer agrees to purchase and accept delivery from Seller of, and Seller agrees to sell, convey, assign, transfer and deliver to Buyer, at the Closing provided for in Section 3, all tangibles and intangibles of Seller relating to the operation of Seller's fishing charter business that are associated with the trade name "**Bad Habit**" including, but not limited to, all customer accounts of Seller, all of Seller's customer lists (and records related to each customer), all goodwill and all rights, title and interest to the name of "Bad Habit", and all names, trademarks and service marks related thereto, or any correlating logos, including without limitation that certain vessel identified by Official Number 941674 and IMO Number VKY45169I889 (the "Vessel").  (If the entity and business trade names of Seller are the same or similar, the Seller shall change its entity name to a dissimilar name to allow Buyer to use the name of the business).  All records, correspondence and other files or copies thereof, relating directly or indirectly to the operation of Seller's business activities, inclusive of existing telephone numbers, websites and e-mail addresses are also hereby expressly included within the purchase and sale.  All assignable contractual arrangements entered into by Seller and third parties, to the extent desired by Buyer (as evidenced by a written assumption agreement executed by Buyer), shall also be included within the purchase and sale.  A true and correct copy of Seller's customer list is attached hereto as <u>Exhibit "A"</u> and made a part hereof.  Also included in the assets being conveyed from Seller to Buyer are the items of furniture, fixtures, equipment and other items of personal property identified in <u>Exhibit "B"</u> attached hereto and made a part hereof, plus all accounts receivable of Seller as of the date of closing.  Seller's existing inventory of goods and merchandise at Seller's cost shall be included in the sale.  Seller and Buyer shall complete a physical inventory of goods and merchandise prior to closing, based on Seller's cost.  The amount of the inventory shall be added to the Purchase Price and paid for at closing.  The foregoing tangible and intangible assets being purchased by Buyer from Seller shall hereinafter be referred to as the "Assets".

1

PLT 000010

2.      Consideration.   As consideration for the purchase of the Assets set forth in paragraph 1 hereinabove, Buyer will pay to Seller the sum of One Hundred Fifty Thousand and 00/100 Dollars ($150,000.00) Dollars (hereinafter referred to as the "Purchase Price").   The Purchase Price shall be paid as follows: within five (5) business days of the execution hereof, the sum of $5,000.00 shall be paid to Mann & Wolf, LLP ("Escrow Agent") as an earnest money escrow deposit ("Deposit"); at Closing, the Deposit and the sum of $145,000.00 shall be paid by Buyer to Seller.

2.1      Escrow of Deposit.   The Deposit shall be paid to Escrow Agent, as escrowee, to be held in escrow until the Closing of this transaction or the sooner termination of this Agreement.  The Escrow Agent is authorized to pay the escrow fund to Seller upon Closing or the default of Buyer hereunder.  The Escrow Agent is to pay the escrow funds to Buyer if Seller shall be unable or fail to consummate this transaction as provided herein or if Buyer is otherwise entitled to said monies pursuant to this Agreement.  The Escrow Agent is acting hereunder as a stakeholder only, without compensation, and for the convenience and at the request of the parties.  The Escrow Agent shall not be liable for any action taken or omitted in good faith, but only for gross negligence or willful disregard of the provisions hereof.  In the event of a dispute between the parties, the Escrow Agent shall have the right to deposit the escrow funds into a court of competent jurisdiction and from and after the date of said deposit, the Escrow Agent shall be released and discharged from all obligations with respect thereto. The parties acknowledge that Escrow Agent is the law firm representing Buyer in this transaction, and may continue to do so in the event of any litigation between the parties.

2.2      Nonassumption of Debts, Liabilities and Obligations of Seller.  Buyer will not assume nor undertake to perform or pay any of the debts, liabilities or obligations of Seller (including, without limitation, trade creditors, general creditors and local, state or federal taxing authorities) existing or incurred prior to the Closing or arising out of any transactions or events occurring prior to the Closing, except obligations under any lease or contract which Buyer, in Buyer's sole discretion, agrees to assume in writing.  Seller agrees to deliver copies of any and all such contracts and leases to Buyer upon execution hereof.   Notwithstanding the foregoing, within five (5) days from the date of full execution hereof, and at Closing, Seller shall provide Buyer with a Creditors Affidavit enumerating any and all existing claims of creditors of Seller, whether contingent, liquidated, disputed or matured, and detailing the name, address and amount claimed by each such creditor.

2.3      Allocation of Consideration.  The Purchase Price shall be allocated on the Closing Statement as follows: $130,000.00 to the Vessel, $10,000.00 to inventory and equipment and $10,000.00 to goodwill.  The parties hereto covenant and agree with each other that the consideration paid for the Assets to Seller represents the true fair market value of such Assets and this allocation was arrived at by arm's length negotiation and that neither of them will take a position on any income tax return, before any governmental agency charged with the collection of any income tax or in any judicial proceeding that is in any manner inconsistent with the terms of this Section without the written consent of the other party to this Agreement.

PLT 000011

3.    <u>Closing</u>.  The closing of the Purchase and Sale of the Assets ("Closing") shall take place on September 1, 2017 (or at such earlier date as agreed by the parties in writing) (the "Closing Date", at the office of Mann & Wolf, LLP in Broward County, Florida or via escrow closing procedures.

3.1    <u>Documents to be Delivered by Seller to Buyer</u>.  At the Closing, Seller will deliver to Buyer:

(A)    a general instrument of sale, conveyance, assignment, transfer and delivery substantially similar in form to <u>Exhibit "D"</u> ("Assignment").

(B)    an Assignment and Assumption of any lease or contract which Buyer is willing to assume.

(C)    all records, customer and vendors' lists, correspondence and other files or exact copies thereof relating directly to the operation and existence of Seller and Seller's business.

(D)    LLC Resolution authorizing the conveyance to Buyer.

(E)    Copies of all client bills rendered as of the date of closing (specifically identifying the period covered by such bills, including whether the service being billed for is billed in advance or arrears), along with a complete list of accounts receivable (including all receivables as of the date of closing, irrespective of when billed); and

(F)    Covenant Not to Compete or Solicit, as more fully described in paragraph 11 hereof.

(G)    Seller's Affidavit acceptable to Buyer concerning the representations, warranties and covenants set forth herein and otherwise containing such other matters applicable to an asset sale transaction and reasonably acceptable to Buyer.

(H)    Appropriate documentation to transfer Seller's telephone numbers and yellow page advertising (as applicable) to Buyer.

(I)    Updated Creditor's Affidavit as set forth in paragraph 2.2 above.

(J)    The Employment Agreement.

(K)    Instruments necessary to transfer any assets titled in the name of Seller to Buyer including, without limitation, the Vessel, as determined in Buyer's reasonable discretion.

(L)    An employment agreement between Duane Dozer and Buyer (the "Employment Agreement") in a form substantially similar to <u>Exhibit "C"</u> attached hereto.

(M)    A signed Closing Statement.

3.2    <u>Documents to be Delivered by Buyer to Seller</u>.  At the Closing, Buyer will deliver to Seller:

3

(A)   a cashier's check, wire transfer or attorney's trust account check in the amount required to be paid as set forth in paragraph 2.

(B)   The Employment Agreement.

(C)   an Assignment and Assumption of any lease or contract which Buyer is willing to assume.

(D)   A signed Closing Statement.

3.3   <u>Prorations</u>.   Personal and real property taxes, rents, pre-paid contracts, employee wages and benefits, utilities and other proratable matters, to the extent applicable, shall be prorated between the parties as of the date of Closing.

3.4   <u>Passage of Title at Closing</u>.   Upon delivery of the Assignment, title to the Assets shall pass to Buyer.   At the Closing, Seller will put Buyer in full, complete and quiet possession and enjoyment of all of the Assets and from and after the Closing the ownership and operation of the Assets shall be for the account and risk of Buyer. Seller shall pay sales tax related to the transfer of the Vessel.

4.   <u>Employment of Duane Dozer</u>.   Duane Dozer shall be employed by Buyer following Closing according to the terms of the Employment Agreement.

5.   <u>Representations and Warranties by Seller</u>.   Seller represents and warrants to Buyer as follows:

5.1   <u>Organization</u>.   Just Bumminit, LLC is a limited liability company and Bad Habit Sportfishing Charters, Inc. is a corporation, each of which is duly organized, validly existing and in good standing under the laws of the State of Florida and has the corporate power and authority to carry on its business as now being conducted and to own and operate the Assets now owned and being operated by it.

5.2   <u>Entity Authority</u>.   Seller has the organizational power to enter into this Agreement and to carry out its obligations hereunder.   The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby have been duly authorized by the members of Seller, and no other organizational proceeding on the part of Seller is necessary to authorize the execution and delivery of this Agreement or the performance of any of the transactions contemplated hereby.   This Agreement has been duly executed and delivered on behalf of Seller and when executed and delivered will be a legal valid and binding obligation of Seller enforceable in accordance with its terms.

5.3   <u>Title to Assets; Assets Sold</u>.   Seller has good and marketable title to all of the Assets.   The Assets are not subject to, and will be conveyed free and clear of, any mortgage, pledge, conditional sales contract, lien, security interest, tax, right of possession in favor of any third party, claim or other encumbrance that will survive closing hereunder.   The Assets are being conveyed by Seller to Buyer in their present as-is, where-is condition, but shall nevertheless be in working order.

4

5.4 <u>Compliance with Laws</u>. Seller has complied with and is in compliance with all federal, state and local laws, ordinances, regulations, rules, permits, judgments, orders or decrees applicable to its operations and business, and there does not exist any basis for any claim or default under or violation of any such statute, law, or ordinance that would materially or adversely affect the ability of Seller to satisfy its obligations arising under this Agreement.

5.5 <u>No Untrue Statements</u>. No statement by Seller contained in this Agreement and no written statement contained in any other document required to be furnished by Seller to Buyer pursuant to this Agreement contains or will contain any untrue statement of a material fact or omits or will omit to state a material fact necessary in order to make the statements contained therein not misleading. To the best of Seller's knowledge and belief after due inquiry, there is no fact that affects, or in the future might reasonably be expected to affect, adversely the condition (financial or otherwise), operations, business, properties or assets of Seller in any material respect that it is not set forth in this Agreement.

5.6 <u>Undisclosed Liabilities/Lawsuits</u>. Seller has no debts, contracts, liabilities or obligations of any kind, character or description, whether accrued, absolute, contingent or otherwise, or due to become due, for which Buyer shall in any way be directly subject or liable, except as specifically identified in paragraph 2.2 hereinabove. Further, there are no outstanding judgments or liens against Seller, and Seller is not presently involved in any litigation or administrative proceedings.

5.7 <u>Survival</u>. All representations, warranties, covenants and indemnifications contained within this Agreement expressly survive the Closing of the purchase and sale transaction.

6. <u>Representations and Warranties by Buyer</u>. Buyer represents and warrants to Seller as follows:

6.1 <u>Entity Organization</u>. Buyer is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Florida and has the organizational power and authority to carry on the business now being conducted by Seller and to acquire and own and operate the Assets.

6.2 <u>Authorization of Agreement; No Violation</u>. Buyer's members have duly authorized the execution and delivery of this Agreement and the purchase and the consummation of the other transactions contemplated hereby. Neither the execution, delivery or performance of this Agreement by Buyer nor the consummation of any of the transactions contemplated hereby (i) will violate or conflict with any provision of the Certificate of Incorporation or Bylaws of Buyer or (ii) will result in any breach of or default under any provision of any contract or agreement of any kind to which Buyer is a party or by which Buyer is bound or to which the properties or Assets of it are subject.

7. <u>Covenants of Seller</u>. Seller covenants and agrees with Buyer as follows:

5

PLT 000014

7.1     Access, Information and Documents.  Pending the Closing, Seller will give to Buyer and to its agents and representatives (including, but not limited to, accountants and lawyers) full and complete access during normal working hours to any and all of the properties, assets, books, records and other documents of Seller that apply to this purchase to enable Buyer to make such examination of the business, properties, assets, books, records and other documents of Seller as Buyer may determine, and Seller will furnish to Buyer such information and copies of such documents and records as Buyer shall reasonably request.

7.2     Conduct of Business Pending Closing.  From the date hereof until the Closing, except as consented to by Buyer in writing:

(A)     Seller will maintain itself at all times as a corporation duly organized, validly existing and in good standing under the laws of the State of Florida;

(B)     Seller will carry on its business and operations in a good and diligent manner on an arm's-length basis and substantially in the manner carried on as of the date hereof and Seller will not engage in any activity or transaction or make any commitment to purchase or spend, other than in the ordinary course of its business as heretofore conducted;

(C)     Seller will continue to carry insurance insuring its property and operations against all risks usually insured against by persons operating similar properties or conducting similar operations in the locality where such property is located under valid and enforceable policies issued by insurers of recognized responsibility;

(D)     Seller will use its best efforts to preserve its business organization intact, to keep available to Buyer the services of its employees and independent contractors and to preserve for Buyer its relationships with suppliers, licensees, distributors and customers and others having business relationships with it.  Seller further agrees to encourage its employees to become employees of Buyer following closing hereunder, but makes no representation that any of its employees will become employees of Buyer;

(E)     Seller will not, and will not obligate itself to, sell or otherwise dispose of or pledge or otherwise encumber, any of its properties or Assets;

(F)     No suit has been pending or shall be filed before any court in connection with any claim against Seller or the Assets, and Seller hereby indemnifies and holds Buyer harmless in the event Buyer suffers any loss or damage relative thereto.  In the event any suit shall be filed prior to closing, Seller shall eliminate such suit or otherwise provide adequate protection to Buyer and the Assets against any loss or potential loss related thereto, and Seller will indemnify and hold Buyer harmless from and against any such loss incurred.

8.     Conditions Precedent to Buyer's Obligation to Purchase the Assets.  Seller and Buyer hereby acknowledge that, as of the date of execution of this Agreement, Buyer has not yet had an opportunity to fully review and examine certain matters pertaining to the operation of Seller's business including, but not necessarily limited to, the financial books and records of the Seller that apply to this purchase; arrange financing; inspect the Assets; review and/or negotiate a

6

new lease, among other matters. Therefore, Buyer and its agents shall have the right, from the date of full execution hereof until the day prior to Closing Date (the "Inspection Period"), to perform an inspection and due diligence concerning the aforementioned matters, as well as any other matters deemed appropriate by Buyer (and Buyer's accountants, attorneys and advisors) in connection with its evaluation of Seller's business and the Assets. Access to all records of Seller shall be provided to Buyer by Seller as needed. In the event, at any time during the Inspection Period, Buyer is dissatisfied with the results of its findings for any reason, then and in such event Buyer shall notify Seller accordingly in writing to be received by Seller within two (2) business days following the end of the Inspection Period and this Agreement shall be deemed null, void and of no further force or effect, the Deposit plus accrued interest, if any, shall be returned to Buyer, and Seller and Buyer shall thereafter be released from liability hereunder.

The obligation of Buyer to purchase the Assets is also subject to the fulfillment prior to or at the Closing of the following conditions:

8.1    <u>Seller's Performance</u>.  There shall not be any material error, misstatement or omission in the representations and warranties made by Seller in this Agreement; all representations and warranties by Seller contained in this Agreement shall be true in all material respects at and as of the Closing as though such representations and warranties were made at and as of said time;  and Seller shall have reasonably performed and complied with all the terms, provisions and conditions of this Agreement to be performed and complied with by Seller at or before the Closing.

8.2 <u>Consents and Approvals</u>.  Seller and Buyer shall have obtained all consents, authorizations and approvals under all contracts, leases, statutes, laws, ordinances, regulations, rules, judgments, decrees and orders of any court or governmental agency, board, bureau, body, department or authority or of any other person or entity required to be obtained by Seller or Buyer, as the case may be, in connection with the execution, delivery and performance of the Agreement and the consummation of the transactions contemplated hereby.

9.    <u>Termination</u>. This Agreement may be terminated as follows:

9.1    <u>Termination by Buyer</u>.  Buyer may, without liability to Seller, terminate this Agreement by notice to Seller (i) at any time prior to the Closing if default shall be made by Seller in the observance or in the due and timely performance of any of the terms hereof to be performed by Seller that cannot be cured at or prior to the Closing, or (ii) at the Closing if any of the conditions precedent to the performance of Buyer's obligations at the Closing shall not have been fulfilled, or (iii) in accordance with paragraph 8 hereof.

9.2    <u>Termination by Seller</u>.  Seller may, without liability to Buyer, terminate this Agreement by notice to Buyer at any time prior to the Closing if default shall be made by Buyer in the performance of any of the terms hereof to be performed by Buyer that cannot be cured at or prior to the Closing.

9.3    <u>Default</u>.        Should Buyer be in default hereunder, the Seller shall be entitled to solely to retain the Deposit as Seller's sole and exclusive remedy for default. Should

7

Seller be in default hereunder, the Buyer shall be entitled to a refund of its Deposit or specific performance, without thereby waiving any action at law for damages.

10.    <u>Indemnification / Right of Set Off</u>.   Seller, jointly and severally, hereby agree(s) to indemnify against and hold Buyer harmless from any and all claims, demands, liabilities and obligations of any creditors of Seller not specifically assumed by Buyer, including but not limited to claims of trade and general creditors under any oral or written agreements, contracts or leases, and for any local, state or federal taxes, liens, assessments or other charges. Seller and Seller's members shall also indemnify and hold Buyer harmless, without limitation, against and in respect of any and all damages to Buyer resulting from any misrepresentation of a material fact by Seller contained in this Agreement, or any breach of any covenant, representation or warranty by Seller contained in this Agreement.   In the event Seller does not indemnify and hold harmless Buyer as provided for in this Section or pay any such claim within twenty (20) business days of its receipt of written notice from Buyer regarding same, Buyer shall have the right to pay such claim and set off the amount of such claim from the amount due to Seller as the Deferred Payment.

11.    <u>Covenant against Competition and Solicitation</u>.    Seller, jointly and severally, hereby covenants and agrees with Buyer that, from and after the date of this Agreement, Seller shall not, for a period of five (5) years from the date hereof, within Monroe and Miami-Dade County, Florida, directly or indirectly, operate, organize, maintain, establish, manage, work for, own or participate in, a business providing the same or similar products or services as provided by Seller.  Further, Seller shall not in any manner contact or solicit any of the customers or customer accounts transferred for any reason whatsoever, or provide any information relating to said customers and customer accounts to any third party, without first obtaining Buyer's written consent.   At Closing, Seller (including all of Seller's members), shall execute and deliver a Covenant Not to Compete in favor of the Buyer in a form acceptable to Buyer evidencing the foregoing. This provision shall survive closing hereunder.

12.    <u>Confidentiality</u>.    To the extent reasonably possible, Seller and Buyer agree that the terms and conditions of this Agreement shall remain confidential, except to the extent that information and terms are to be disclosed to the various professionals and agents employed and/or retained by each party in connection with Buyer's due diligence and the consummation of the purchase and sale transaction. This provision shall survive Closing.

13.    <u>Joinder By Members</u>. The parties hereby acknowledge and agree that the conveyance of the Assets by Seller transfers substantially all of the Assets of **Just Bumminit, LLC**.  Accordingly, the members and/or officers and directors of Seller (which Seller and the undersigned hereby represent and warrant consists solely of **Paul Fafeita**, **Karrie Dozer** and **Duane Dozer**) hereby indemnify, hold Buyer harmless from, and personally guarantee all of the indemnifications, covenants, representations and warranties against creditors claims and taxes set forth in this Agreement, and personally agree to be bound by the covenant against competition and other matters set forth in paragraph 11 of this Agreement.

14.    <u>Taxes</u>.

8

PLT 000017

(A)  Seller represents and warrants that it has filed with all governmental agencies all tax returns required to be filed by it (including, without limitation, federal, state, city, foreign, profits, franchise, sales, use, occupation, property, excise or other taxes) and has paid any and all taxes the non-payment of which would or could constitute a lien or encumbrance against any of the Assets of Seller and/or be enforceable against Buyer or the Assets after Buyer's possession following the Closing, and has not received any notices of audit. Not later than fifteen (15) days prior to the end of the Inspection Period, Seller shall furnish evidence to Buyer, either (i) receipts for full payment of all personal property taxes, sales taxes, employment taxes, and any other applicable federal, state and local taxes affecting the operation of the business and the Assets, or (ii) statements in writing from the particular taxing authorities as to the amounts necessary to pay to clear the interest of any entity claiming a lien, lien rights, or encumbrance against the Assets for non-payment of such tax.  With respect to any taxes not yet due and payable as of the Closing Date, an escrow, indemnity agreement or other adequate assurance acceptable to Buyer shall be provided by Seller and its members.

(B)  Within five (5) days prior to the end of the Inspection Period, and in accordance with Florida Statute section **213.758**, Seller shall furnish to Buyer a clearance letter from the Florida Department of Revenue that all sales, unemployment and other state taxes attributable to the operation of Seller's business and the Assets have been paid to date, and that there is no outstanding sales or other tax due with respect to the operation of said business or Assets.  In the event Seller does not provide such letter, Escrow Agent shall, in accordance with statute, hold a sufficient portion of the sales proceeds to cover the amount of taxes, interest and penalties due and unpaid.  Furthermore, Seller (which for purposes hereof includes Seller's members, individually) agree(s) to hold Buyer harmless and indemnify Buyer from any and all claims and liabilities for sales and other taxes owed as of the Closing date plus all accrued interest and penalties.  This provision shall survive closing.

15.    <u>Miscellaneous</u>.

15.1    <u>Assurance of Further Action</u>.  From time to time after the Closing and without further consideration, each party shall execute and deliver, or cause to be executed and delivered, to the other such further instruments of sale, conveyance, assignment, transfer and delivery and take such other action as such party may reasonably request in order to more effectively sell, convey, assign, transfer and deliver and reduce to the possession of Buyer any and all of the Assets and consummate the transactions contemplated hereby.

15.2    <u>Notices</u>.  All notices, requests or other communications hereunder shall be in writing and shall be deemed to have been duly given if delivered or mailed first class certified mail postage prepaid, overnight courier or via email addressed as follows:

if to Buyer, to:    _____
_____
_____
Attn: _____
Email:_____

9

PLT 000018

with a copy to:        Mann & Wolf, LLP
100 NE 3rd Ave., Suite 780
Fort Lauderdale, FL 33301
Email: Andrew@mannwolf.com

if to Seller, to:       _____
_____
_____
Attn:_____
Email:_____

with a copy to:        _____
_____
_____
Email:_____

or to such other address as may have been furnished in writing to the party giving the notice by the party to whom notice is to be given.

15.3    Brokers.  All negotiations relative to this Agreement and the transactions contemplated hereby have been carried on by Seller directly with Buyer and without the intervention of any other person and in such manner as not to give rise to any valid claim against any of the parties for any finder's fee, brokerage commission or like payment.

15.4    Entire Agreement.  This Agreement embodies the entire agreement among the parties and there have been and are no agreements, representations or warranties, oral or written among the parties other than those set forth or provided for in this Agreement.  This Agreement may not be modified or changed, in whole or in part, except by a supplemental agreement signed by each of the parties.

15.5    Rights Under this Agreement; Nonassignability.  This Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and assigns, but shall not be assignable by any party without the prior written consent of the other party; provided, however, that Buyer may assign all or any part of its rights under this Agreement and delegate all or any part of its obligations under this Agreement to an entity all or substantially all of the capital stock or equity interests of which are owned by Buyer or its current members, in which event the original Buyer shall be released from liability hereunder, and all of the rights and powers of Buyer, and remedies available to it hereunder shall extend to and be enforceable by each such entity.

Nothing contained in this Agreement is intended to confer upon any person, other than the parties to this Agreement and their respective successors and assigns, any rights, remedies, obligations or liabilities under or by reason of this Agreement.

10

15.6     Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, and venue shall be in Broward County, Florida.

15.7     Headings; References to Sections, Exhibits.  The headings of the Sections, paragraphs and subparagraphs of this Agreement are solely for convenience and reference and shall not limit or otherwise affect the meaning of any of the terms or provisions of this Agreement. The references herein to Sections and Exhibits, unless otherwise indicated, are references to sections of and exhibits to this Agreement.

15.8     Counterparts.   This Agreement may be executed in any number of counterparts, each of which shall be an original, but which together constitute one and the same instrument.

15.9     Attorney's Fees.  In the event of any litigation between the parties to enforce the terms of this Agreement, the prevailing party shall recover its attorney's fees and costs from the non-prevailing party.

15.10    Construction of Agreement and Attorney Review.  All of the parties to this Agreement have participated freely in the negotiation and preparation hereof and have been afforded the opportunity to review this Agreement with their respective attorneys; accordingly, this Agreement shall not be more strictly construed against any one of the parties hereto.

**IN WITNESS WHEREOF,** the parties have duly executed this Agreement as of the date first above written.

**SELLER:**

**BUYER:**

**Just Bumminit, LLC,** a Florida limited liability company

**CoKa Ventures LLC,** a Florida limited liability company

By: _____

Name: _____Paule Patrita_____

Title: _____Manager_____

By: _____

Karen Sobotka, Manager

**BAD HABIT SPORTFISHING CHARTERS, INC.,** a Florida corporation,

and

By: _____

Name: _____Duane Dozer_____

Title: _____President_____

By: _____

Colin Hutzler, Manager

and

_____

        **DUANE DOZER**

C:\MWLLP\cl\Sobotka\APA\APA 082217.docx

11

**<u>EXHIBIT A</u>**

**<u>CUSTOMER LIST</u>**

12

PLT 000021

**<u>EXHIBIT B</u>**

**<u>PERSONAL PROPERTY</u>**

PLT 000022

## EXHIBIT C

## EMPLOYMENT AGREEMENT

**THIS EMPLOYMENT AGREEMENT** is dated as of August ___, 2017, by and between **CoKa VENTURES LLC**, a Florida limited liability company (hereinafter referred to as the "Employer") and **DUANE DOZER** (the "Employee").

**WHEREAS**, the Employer is engaged in the business of providing charter boat fishing in Islamorada, Florida, and related products and services; and

**WHEREAS**, the Employee is charter boat fisherman and captain qualified to perform services for the Employer; and

**WHEREAS**, Employee desires to be employed by the Employer and the Employer desires to employ the Employee on the terms, covenants and conditions hereinafter set forth.

**NOW, THEREFORE**, in consideration of the premises and the respective mutual agreements, covenants, representations and warranties herein contained, the parties hereto hereby agree as follows:

1.    <u>Recitals</u>.  The above recitals are true and correct.

2.    <u>Employment</u>. The Employer hereby employs the Employee as charter boat fisherman and captain of Employer's business and the Employee hereby accepts employment with the Employer.  Employee shall render such services as may be required from time to time for the benefit of Employer.

3.    <u>Term</u>. The term of this Agreement shall commence upon execution hereof (the "Commencement Date") and shall continue for a period of five (5) years (i.e., 60 months from the Commencement Date) and shall automatically renew from additional five (5) year terms until terminated as set forth in Section 9 hereof.

4.    <u>Compensation; Benefits.</u>

(a)    <u>Salary</u>.  The Employee shall receive as compensation for all services rendered to the Employer, the salary as set forth in <u>Exhibit "A"</u> attached hereto and made a part hereof, prorated and payable at such intervals as may be determined by the Employer; provided, however, that payments shall not be less frequently than monthly.

(b)    <u>Taxes</u>. The Employer shall deduct and withhold all necessary social security and withholding taxes and any other similar sums required by law from the Employee's compensation.

      (c)    <u>Benefits.</u>  Employer shall provide Employee with such benefits as are set forth in <u>Exhibit "A"</u> attached hereto and made a part hereof.

     5.    <u>Expenses</u>.    The Employer agrees either to pay directly or to reimburse the Employee, at the Employer's option, for only those reasonable and customary business expenses approved in writing in advance by Employer from time to time. Employee shall seek prior written approval from Employer for any expenses exceeding $500.00 and for any expenses which are not reasonable and customary.

     6.    <u>Billings</u>.

      (a)    All billings, fees and charges received or realized as a result of services rendered by Employee shall belong to and be the property of the Employer.  The Employee agrees to abide by the schedule of charges promulgated and modified from time to time by the Employer.

      (b)    Employee agrees to cooperate and lend his full assistance to Employer in the collection of any billings, fees and charges.

     7.    <u>Scope of Employment</u>.

      (a)    The Employee agrees that he will at all times, faithfully, industriously and to the best of his ability, experience, and talents, perform all the duties that may be required of and from him pursuant to the express and implicit terms hereof, to the reasonable satisfaction of the Employer.

      (b)    The Employer recognizes that professional regulatory and advisory groups have, and may from time to time, establish health, safety and other standards and requirements with regard to responsibilities of the Employee.  All provisions contained herein with respect to duties and obligations of the Employee shall be strictly subject to such standards and requirements.

      (c)    The Employee shall devote his full time to the performance of his duties under this Agreement. Employee shall perform no services to or for any company other than Employer including, without limitation, providing consulting services.

      (d)    The Employee agrees to observe and comply with the rules and regulations of the Employer, as adopted by the Employer from time to time with respect to the performance of the duties of the Employee.  The Employee specifically acknowledges that the Employer shall have the final authority over the acceptance or refusal of any person or entity for whom products and services shall be rendered by the Employee on behalf of the Employer.  The Employee acknowledges that he has no authority to enter into any contracts that are binding upon the Employer unless such contracts or obligations are authorized by the Employer.  The Employer shall have the power to direct, control and supervise the duties to be performed by the Employee, the manner of performing said duties, and the time of performing said duties.

PLT 000024

(e)     The Employee shall not at any time either during the term hereof or thereafter in any manner, either directly or indirectly, divulge, disclose or communicate to any person, firm or corporation, in any manner whatsoever any information concerning any matters affecting or relating to the business of the Employer including, but without limiting the generality of the foregoing, any of its customers, the billings, fees and charges it obtains or has obtained from rendering of its products and services, its earnings or finances, its manner of operation, its plans, processes, or other information concerning the business of the Employer and its customers. Without regard to whether all of the foregoing matters will be deemed confidential, material or important, the parties to this Agreement hereby stipulate that as between them, the same are confidential, material, and important and gravely affect the successful conduct of business of the Employer, and the Employer's goodwill and professional reputation, and that any breach of the terms of this Section shall be a material breach of this Agreement. The foregoing shall not apply to confidential information which is otherwise made public by someone other than the Employee or the disclosure of which is compelled by a court of competent jurisdiction.

8.     <u>Paid Time Off</u>. The Employee shall be entitled to twenty-one (21) days of paid time off per year, which may be used for any purpose. Paid time off days must be used in the calendar year for which they apply, and will not carry over to any subsequent year. Employee must give Employer at least four (4) weeks written notice of any period of three (3) or more consecutive days of paid time off that Employee wishes to use and the requested paid time off days may not conflict with any trips or services which have already been scheduled by the customers of the Employer. In the event Employee shall fail to give such notice, the Employer shall have the right to deny the paid time off.

9.     <u>Termination</u>.

(a)     This Agreement may be terminated by Employer, without notice, at any time for "cause". In the event Employee shall be terminated for cause, the termination shall be effective immediately upon written notification by Employer to Employee. The term "cause" shall be for any one of the following matters:

(i)  Upon material violation by Employee of any of the provisions of this Agreement or the rules, policies, and/or procedures of Employer, if such violation is not cured within 3 days after written notice from Employer, or if Employee commits a similar violation within 12 months of receiving any such notice.

(ii)  Upon the death or disability of Employee.

(iii)  Upon the imposition of any restriction or limitation on Employee by any governmental or professional authority having jurisdiction over Employee to such extent that Employee cannot engage in the employment as contemplated under this Agreement.

(iv)  Upon Employee being charged with a felony or crime of moral

turpitude as defined by the applicable state laws.

(v)   Upon the failure by Employee to perform his duties in a professional, competent, ethical and moral manner, or to achieve the performance objectives and standards, all as reasonably determined by Employer, or otherwise engages in activities that would constitute a conflict of interest with Employer.

(b)   This Agreement may be terminated by Employer at any time without cause; provided, however, that Employer shall provide Employee with no less than two (2) weeks prior written notice of termination.  In the event Employee shall be terminated without cause, Employee shall be paid his salary through the date of termination specified in the notice.

10.   Records and Files.  All records and files concerning customers of the Employer shall be the sole property of the Employer during and after the term of this Agreement.

11.   Covenant Not To Compete.

(a)   The following agreement on the part of Employee is hereinafter referred to as the "Restrictive Covenants", which is that during the term of this Agreement and for a period of five (5) years after the termination of this Agreement, Employee agrees that he will not, without the prior written consent of Employer, directly or indirectly, as an employee, employer, agent, principal, proprietor, partner, stockholder, consultant, director, officer, or in any other capacity: (i)  provide services similar to the services provided to Employer pursuant to this Agreement, and/or engage in the business of providing chartered fishing trips or/and captaining or related products and services similar in nature to the services offered by Employer, within Monroe or Miami-Dade Counties, Florida; (ii)  call, solicit, or canvass, either for himself or any other person or firm, directly or indirectly, any of Employer's present or former customers; or (iii) entice, solicit, or induce, either directly or indirectly, any person who is employed by Employer (either as an employee or independent contractor) to leave the employ of  Employer; or (iv)  divulge, communicate, or use to the detriment of Employer, or for the benefit of any other person or entity, or misuse in any way, any proprietary or confidential information of Employer hereafter referred to.   Employee acknowledges and agrees that his position with Employer is one of trust and confidence and that he will gain access and knowledge to certain proprietary and confidential information of Employer during the term of this Agreement, including, without limitation, the identity of its customers and suppliers, its arrangements with customers and suppliers, and other technical data, methods of doing business, records, compilations of information, and specifications relating to its customers, suppliers, products and services.  All files, records, documents, specifications, computer software, and other information, related to Employer's customers or otherwise, whether prepared by Employee or otherwise coming into his possession, shall be the exclusive property of Employer and shall not be retained by Employee upon termination of this Agreement.

(b)   Reasonableness of Restrictions.        The parties hereto acknowledge that the Restrictive Covenants are a reasonable restraint upon Employee and further acknowledge that any violation of the Restrictive Covenants would cause irreparable harm and damages, and have a substantial detrimental effect on Employer.  Employee has carefully considered the nature and

extent of the Restrictive Covenants (including, but not limited to, the time period of restriction, the geographical area of restriction, the resignation requirements, and the damages and injunctive relief provisions) and the rights and remedies conferred upon Employer under the provisions of the Restrictive Covenants, and hereby acknowledges and agrees that the same are reasonable in time and territory, are designed to eliminate competition which would otherwise be unfair to Employer, do not stifle Employee's inherent skill and experience, would not operate as a bar to Employee's sole means of support, are fully required to protect the legitimate interest of Employer, and do not confer a benefit upon Employer disproportionate to the detriment of Employee. In the event that any provision relating to the time period or geographic area of any restriction set forth in this Section 11 shall be declared by a court of competent jurisdiction to exceed the maximum time period or area of restriction that the court deems reasonable and enforceable, the time period or area of restriction which the court finds to be reasonable and enforceable shall be deemed to become, and thereafter shall be, the maximum time period or geographic area of such restriction.

(c)     <u>Liquidated Damages and Injunction</u>. Employee agrees that damages resulting from a violation of the Restrictive Covenants will be impossible to ascertain and for that reason agrees that (i) Employee shall pay to Employer the sum of $20,000.00 as liquidated damages in the event of a violation of the Restrictive Covenants, and (ii) that Employer shall be entitled to an injunction without the necessity of posting bond, from any court of competent jurisdiction restraining any violation of any or all of the Restrictive Covenants either directly or indirectly and such right to injunction shall be cumulative and in addition to whatever other remedies Employer may have at law and in equity.  Employee further agrees that, if he shall violate the Restrictive Covenants, Employer will be entitled to an accounting and payment of all profits, compensation, commissions, remunerations, or benefits which Employee, directly or indirectly, has realized and/or may realize as a result of, growing out of, or in connection with, any such violation.  Employee acknowledges that this provision has been called to his attention and that he understands it is a material covenant and that without his agreement with these provisions, this Agreement would not have been entered into by Employer. Employee and Employer agree that the liquidated damages provision contained in this section is a bona fide liquidated damages provision and not a penalty or forfeiture provision. If a court of competent jurisdiction is unwilling to enforce the liquidated damages or injunction provisions of this section, then Employer shall be entitled to all other remedies available at law and in equity.

(d)     <u>Survival</u>.       The covenants set forth in this Section 11 shall survive the termination of this Agreement.

12.     <u>Entire Agreement</u>.   This Agreement represents the entire understanding and agreement between the parties with respect to the subject matter hereof, and supersedes all other negotiations, understandings and representations (if any) made by and between such parties, to the extent inconsistent herewith.

13.     <u>Amendments</u>.   The provisions of this Agreement may not be amended, supplemented, waived or changed orally, except by a writing signed by all parties to this Agreement.

14.     <u>Further Assurances</u>.  The parties hereby agree from time to time to execute and deliver such further and other transfers, assignments and documents and do all matters and things which may be convenient or necessary to more effectively and completely carry out the intentions of this Agreement.

15.     <u>Binding Effect</u>.  All of the terms and provisions of this Agreement, whether so expressed or not, shall be binding upon, inure to the benefit of, and be enforceable by the parties and their respective administrators, executors, legal representatives, heirs, successors and permitted assigns.  Without limiting the generality of the foregoing, any rights given or duties imposed upon the estate of a deceased Employee shall inure to the benefit of and be binding upon the fiduciary of such decedent's estate in his or her fiduciary capacity.

16.     <u>Notices</u>.   All notices, requests, consents and other communications required or permitted under this Agreement shall be in writing and shall be (as elected by the person giving such notice) by US mail, return receipt request, overnight courier or email, addressed to each party at the following addresses:

if to Employer, to:          _____
                             _____
                             _____
                             Attn: _____
                             Email:_____

with a copy to:              Mann & Wolf, LLP
                             100 NE 3rd Ave., Suite 780
                             Fort Lauderdale, FL 33301
                             Email: Andrew@mannwolf.com

if to Employee, to:          _____
                             _____
                             _____
                             Attn:_____
                             Email:_____

with a copy to:              _____
                             _____
                             _____
                             Email:_____

 hereto, or to such other address as any party may designate by notice complying with the terms of this Section.  Each such notice shall be deemed delivered (a) on the date emailed, and (b) on the date upon which the return receipt is signed or delivery is refused or the notice is designated by the postal authorities as not deliverable, as the case may be, if mailed or overnight courier.

17.     <u>Headings</u>.   The headings contained in this Agreement are for convenience of reference only, and shall not limit or otherwise affect in any way the meaning or interpretation of

this Agreement.

18.     Severability.  If any part of this Agreement or any other Agreement entered into pursuant hereto is contrary to, prohibited by or deemed invalid under applicable law or regulation, such provision shall be inapplicable and deemed omitted to the extent so contrary, prohibited or invalid, but the remainder hereof or thereof shall not be invalidated thereby and shall be given full force and effect so far as possible.

19.     Pronouns.  In this Agreement, the use of any gender shall be deemed to include all genders, and the use of the singular shall include the plural, wherever it appears appropriate from the context.

20.     Waivers.  The failure or delay of any party at any time to require performance by another party of any provision of this Agreement, even if known, shall not affect the right of such party to require performance of that provision or to exercise any right, power or remedy hereunder, and any waiver by any party of any breach of any provision of this Agreement should not be construed as a waiver of any continuing or succeeding breach of such provision, a waiver of the provision itself, or a waiver of any right, power or remedy under this Agreement.  No notice to or demand on any party in any case shall, of itself, entitle such party to any other or further notice or demand in similar or other circumstances.

21.     Enforcement Costs.  If any legal action or other proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default or misrepresentation in connection with any provisions of this Agreement, the successful or prevailing party or parties shall be entitled to recover reasonable attorneys' fees, court costs and all expenses even if not taxable as court costs (including, without limitation, all such fees, costs and expenses incident to appeals), incurred in that action or proceeding, in addition to any other relief to which such party or parties may be entitled.

22.     Remedies Cumulative.  No remedy herein conferred upon any party is intended to be exclusive of any other remedy, and each and every such remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute or otherwise.  No single or partial exercise by any party of any right, power or remedy hereunder shall preclude any other or further exercise thereof.

23.     Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

24.     Governing Law.  This Agreement and all transactions contemplated by this Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida without regard to principles of conflicts of laws.

25.     Construction of Agreement and Attorney Review. All of the parties to this Agreement have participated freely in the negotiation and preparation hereof and have been afforded the opportunity to review this Agreement with their respective attorneys; accordingly,

this Agreement shall not be more strictly construed against any one of the parties hereto.

PLT 000030

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Agreement as of the day and year first above written.

**EMPLOYEE:**                                         **EMPLOYER:**

                                                      **CoKa Ventures LLC,** a Florida limited
                                                      liability company

_____                    By:_____
             **DUANE DOZER**                          Karen Sobotka, Manager

PLT 000031

<u>**EXHIBIT A (TO EMPLOYMENT AGREEMENT)**</u>

<u>**SALARY AND BENEFITS**</u>

Salary: $70,000.00 per year.

Bonus: For each charter fishing trip that Employee captains in excess of 250 trips per year, Employee shall be entitled the following bonuses:

- Overnight Trip:          $150.00
- Full Day Trip:           $100.00
- Half Day Trip           $100.00

PLT 000032

**EXHIBIT D**

**ASSIGNMENT**

**WHEREAS**, **JUST BUMMINIT, LLC**, a Florida limited liability company and **DUANE DOZER** (collectively, "Seller") and **CoKa VENTURES LLC,** a Florida limited liability company ("Buyer") are parties to that certain Asset Purchase Agreement, dated as of August ___, 2017 (the "Agreement"), pursuant to which the Seller has agreed to convey certain assets, contracts and properties to the Buyer in accordance with the terms and provisions of the Agreement; and

**WHEREAS**, Seller has warranted and represented, and does hereby warrant and represent, to Buyer that Seller is duly and validly authorized and empowered to make, execute and deliver this Assignment and to enter in to the covenants, promises and undertakings herein contained.

**NOW, THEREFORE**, in consideration of the premises and payment of the purchase price under the Agreement:

**W I T N E S S E T H:**

1.     Seller, pursuant to the Agreement, does hereby sell, assign, transfer, convey, set over and confirm to Buyer, its successors and assigns, to have and to hold forever, all of Seller's right, title and interest of every kind and character whatsoever in, to or with respect to all Assets (as defined in the Agreement).

2.     Seller covenants and agrees to make, execute and deliver to Buyer any and all instruments and powers of attorney and other authority which Seller may lawfully make, execute and deliver, in addition to any such powers and authorities as are contained herein, which may be or become necessary, proper or convenient to enable Buyer to reduce to possession, collect, enforce, own or enjoy any and all rights and benefits in, to, with respect to, or in connection with, the Assets, or any part or portion thereof including, without limitation, that certain vessel identified by Official Number 941674 and IMO Number VKY45169I889 and upon Buyer's request, to take, in Seller's name, any and all steps and to do any and all things which may be or become lawful and necessary, proper, convenient or desirable to enable Buyer to reduce to possession, collect, enforce, own and enjoy any and all rights and benefits in, to, with respect to, or in connection with, the Assets, and each and every part and portion thereof.

3.     Seller covenants and agrees with Buyer, its successors and assigns, that Seller will do, execute, acknowledge and deliver, or cause to be done, executed, acknowledged and delivered, any and all such further acts, instruments, papers and documents as may be necessary to carry out and effectuate the intent and purposes of the Agreement and this Assignment.

5.      Notwithstanding the foregoing, no provision of this Assignment shall in any way modify, replace, amend, change, rescind, waive, or in any way affect the express provisions (including the warranties, covenants, agreements, conditions, representations or any of the obligations and indemnifications of Seller and/or Buyer) set forth in the Agreement, this Assignment being intended solely to effect the transfer of certain property sold and purchased pursuant to the Agreement.

**IN WITNESS WHEREOF**, Seller and Buyer have caused this Assignment to be executed this ___ day of August, 2017.

**SELLER:**                                                      **BUYER:**

**JUST BUMMINIT, LLC**, a Florida limited        **CoKa VENTURES LLC,** a Florida limited
liability company                                              liability company

By: _____                   By: _____
Name: _____                  Karen Sobotka, Manager
Title: _____

**BAD HABIT SPORTFISHING**                     and
**CHARTERS, INC.**, a Florida corporation,

By: _____                   By: _____
Name: _____                  Colin Hutzler, Manager
Title: _____

and

_____
**DUANE DOZER**