UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

DUANE DOZER,

      Plaintiff,

v.                                       CASE NO.: 4:19-cv-10172-KMM

COKA VENTURES, LLC, *in personam*, and
*S/F BAD HABIT*, a 1989 model 45' Viking sport
fishing vessel bearing Hull Identification
Number VKY45169I889, and documented as
U.S.C.G. Official Number 941674, her engines,
tackle, apparel, furniture and appurtenances, *in
rem*,

      Defendants.

_____/

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant, CoKa Ventures, LLC ("Defendant" or "CoKa Ventures"), by and through undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56(a), S.D. Fla. Local Rule 56.1 and this Court's Trial Order (ECF No. 19), files its Response in Opposition to Plaintiff Duane Dozer's Motion for Partial Summary Judgment (ECF No. 41), and states in support the following:

### INTRODUCTION & SUMMARY OF THE ARGUMENT

This Jones Act case emanates from alleged personal injuries sustained by the Plaintiff Duane Dozer ("Plaintiff" or "Dozer") on July 12, 2019.  More specifically, Plaintiff alleges that he "hurt his back while crawling around the engine room looking for [an] oil leak" on the sport fishing vessel *Bad Habit* (the "Vessel").[1]  It is noteworthy that Plaintiff does not claim that his injury was caused by something tangible on the vessel being in disrepair or in improper working

_____

[1] Verified Amended Complaint, ECF No. 23, ¶¶ 15–16.

order.  Plaintiff claims the onset of his back pain was immediate, that he immediately discontinued his work for the day and drove home to Vero Beach, Florida on July 12, 2019.  By July 14, 2019, within two (2) days of his alleged back injury, Plaintiff Dozer began to experience weakness and foot drop in his right foot.[2]  Plaintiff advised Defendant of his alleged back injury for the first time on July 15, 2019.  Plaintiff did not request that arrangements be made for medical care via worker's compensations from Defendant until July 18, 2019 and, as such, it is clear that Plaintiff began experiencing the alleged injuries for which he claims damages in this lawsuit prior to providing Defendant with notice of the alleged injuries.  The fact that Plaintiff was experiencing weakness and drop foot prior to giving Defendant notice of his alleged injury is also memorialized in the July 24, 2019 letter drafted by Amber Rule wherein she states that Plaintiff had been experiencing drop foot for over a week.

On July 31, 2019, Plaintiff treated with Dr. Fabio Roberti.  Dr. Roberti noted that Plaintiff had drop foot for three weeks at the time of his office visit.  Dr. Roberti diagnosed Plaintiff with a L4-L5 disc herniation and recommended that he continue therapy and undergo surgery.  Plaintiff told Dr. Roberti that he wanted to think about whether he wanted to move forward with the surgery during that visit.  On August 7, 2019, Plaintiff advised Dr. Roberti's office that Plaintiff wanted to have the surgery.  On August 9, 2019, Defendant advised Dr. Roberti that it would pay for Plaintiff's surgery.  On August 19, 2019, for the first time, the Cleveland Clinic Indian River advised Defendant that it would not accept the payment guarantee it previously requested and that it required that the surgical procedure be paid for in advance.  Cleveland Clinic Indian River provided estimates for the surgical procedure.  Defendant did not have the funds to pay for the surgical procedure directly.  That same day, Defendant's insurance carrier provided an Agreement

---

[2] Depo. Trans. of Plaintiff Dozer, ECF No. 46-1, p. 10, Depo. p. 36, lines 5–19.

Statement in which it agreed to accept financial responsibility for Plaintiff's reasonable medical expenses including the $30,340.20 surgical procedure expenses so that the hospital would agree to move forward with Plaintiff's surgery. (Defendant's Letter dated Aug. 19, 2019, p. 2, attached hereto as **Exhibit B**).   After the funds were collected by Defendant's insurance carrier, Defendant paid for Plaintiff's surgery on September 10, 2019.  On September 18, 2019, Plaintiff Dozer underwent a right L4-5 laminectomy with partial facetectomy, foraminotomy and discectomy on his lumbar spine in an attempt to reverse and/or reduce the alleged right foot drop and back pain.

In this case, despite the onset of his alleged injuries occurring ***before*** he ever provided Defendant with notice, Plaintiff now attempts to contend that his overall physical condition as it relates to his alleged foot drop and back injury would have been better had he undergone surgery on an earlier date.  Stated differently, Plaintiff claims the alleged delay in securing an earlier surgery date is Defendant CoKa Ventures' fault and such delay caused and/or exacerbated Plaintiff's foot drop and back injuries to be permanent in nature.[3]  The record evidence before this Court, however, does not support Plaintiff's arguments for three reasons.

*First*, as discussed in Defendant's *Daubert* Motion (ECF No. 47), the record evidence clearly shows that Plaintiff's lumbar herniation and related right foot drop occurred within two (2) days of the July 12th incident and before he requested medical care from Defendant CoKa Ventures.  In deposition, Plaintiff Dozer testified that, on July 14, 2019 which is one day ***before*** reporting his alleged back injury to Defendant, he began experiencing "numb[ness]" and pain in his right leg in addition to the ongoing back pain.[4]  In addition, Plaintiff's medical records indicate

---

[3] Plaintiff's Motion for Partial Summary Judgment, ECF No. 41, p. 12; Verified Amended Complaint, ECF No. 23, ¶¶ 54, 74–78.
[4] Depo. Trans. of Plaintiff Dozer, ECF No. 46-1, p. 10, Depo. p. 35, line 18 to p. 36, line 19.

that he reported "a 3 week[] history of right leg pain" with an onset date of about July 12, 2019.[5] As such, because Plaintiff's foot drop and back injuries existed ***before*** reporting the same to Defendant, Plaintiff Dozer cannot claim that Defendant CoKa Ventures somehow caused or exacerbated his alleged injuries.  In fact, there is no record evidence that Plaintiff's condition is any different than when he first requested medical care from Defendant on July 15, 2019.

*Second*, Plaintiff Dozer's treating physicians, Dr. Fabio Roberti and Dr. Juan Uribe, testified in deposition that successful back surgery would not guarantee a betterment of Plaintiff's foot drop and back pain.[6]  **In fact, as early as July 31, 2019, Dr. Roberti explicitly disclosed to Plaintiff Dozer that a successful back decompression surgery could in fact yield continued symptomatology of foot drop and back pain**.[7]  Consistent with that disclosure, Dr. Roberti testified in deposition that he was not aware of any medical literature which concluded that the surgical procedure sought by Plaintiff Dozer should be performed within a specific timeframe after the injury in order to guarantee complete resolution, as further detailed in Defendant's *Daubert* Motion (ECF No. 47).[8]  Moreover, Plaintiff's current treating physician, Dr. Uribe, testified in deposition that he cannot relate Plaintiff's current symptomatology to an alleged delay in receiving decompression surgery.[9]  Like Dr. Roberti, Dr. Uribe testified that he too was unaware of any medical literature which concluded that the surgical procedure sought by Plaintiff Dozer should be performed within a specific timeframe after the injury in order to guarantee complete resolution. As such, because Plaintiff's pre-existing foot drop and back injury were not guaranteed to be

---

[5] Dr. Roberti's Progress Note dated July 31, 2019, ECF No. 42-8, p. 2.

[6] Depo. Trans. of Dr. Roberti, ECF No. 46-6, pp. 16-18; Dr. Roberti's Progress Note dated July 31, 2019, ECF No. 46-7, p. 3; Depo. Trans. of Dr. Uribe, ECF No. 46-10, p. 10.

[7] Depo. Trans. of Dr. Roberti, ECF No. 46-6, p. 16/54; Dr. Roberti's Progress Note dated July 31, 2019, ECF No. 46-7, p. 3.

[8] Defendant's *Daubert* Motion, ECF No. 47, p. 6, ¶ 8.

[9] Depo. Trans. of Dr. Uribe, ECF No. 46-10, p. 10, Depo. pp. 32–33.

resolved by the decompression surgery and there is no medical science to support any such opinions, Plaintiff cannot prove that Defendant's alleged failure to provide him with prompt medical care has led to his current alleged injuries which are identical to the alleged injuries he complained of when he first requested that Defendant provide him with medical care on July 18, 2019.

*Lastly*, as a corollary to the second reason, even if Plaintiff's alleged injuries had their origin in the time period after he advised Defendant he wanted medical care, the record evidence dispels Plaintiff's contention that Defendant CoKa Ventures' response to Plaintiff's claim caused and/or exacerbated his alleged injuries. More specifically, in order to establish liability in this matter, Plaintiff carries the burden of showing what type of delay could cause the alleged injuries and how the alleged delay to undergo decompression surgery caused the alleged resulting injuries. Simply put, the record evidence shows that Plaintiff cannot carry his burden. As noted above, Plaintiff's treating physicians cannot opine within a reasonable degree of medical certainty the alleged delay between the date of injury or the date of diagnosis and surgery caused and/or exacerbated Plaintiff's alleged injuries. Notably, the record evidence shows that Plaintiff developed his symptoms prior to advising Defendant that he wanted medical treatment for his alleged injuries. The record evidence also shows that Plaintiff continued to experience foot drop and back pain up until he treated with Dr. Roberti on July 31, 2019.[10] Additionally, despite the fact that he received a surgical recommendation from Dr. Roberti on July 31, 2019, the record evidence shows that Plaintiff did not advise Dr. Roberti that he wanted to go forward with the surgical procedure until August 7, 2019.[11] On August 9, 2019, nine days after receiving Dr.

---

[10] *See* Depo. Trans. of Plaintiff Dozer, ECF No. 46-1, p. 10, Depo. p. 36, lines 5–19; Amber Rule, ARNP, Medical Note dated July 24, 2019, ECF No. 42-6, p. 2.
[11] Depo. Trans. of Dr. Roberti, ECF No. 46-6, p. 16, Depo. p. 51, lines 15-23.

Roberti's Progress Note dated July 31, 2019 and two days after Plaintiff decided that he wanted to move forward with the surgery, Defendant CoKa Ventures agreed to pay for the recommended "right L4-5 laminectomy foraminotomy discectomy" as requested by Plaintiff.[12]  As such, because there is no record evidence showing a causal connection between the timing of the surgery and the Plaintiff's current symptomatology of foot drop and back injury, Plaintiff Dozer cannot show that some purported delay on the part of Defendant CoKa Ventures caused or exacerbated his alleged current injuries.

<u>**MEMORANDUM OF LAW**</u>

I.   **Arguments**

In his Motion, Plaintiff attempts to evade the actual issues in this matter by arguing that Plaintiff Dozer would have had a better post-surgical outcome if surgery was performed at an earlier time. (ECF No. 41).  Simply put, Plaintiff is wrong for the reasons discussed herein below.

The Jones Act provides that "[a] seaman injured in the course of employment" may "bring a civil action at law . . . against the employer." 46 U.S.C. § 30104.  "[I]n establishing a Jones Act claim based on negligence, the elements of duty, breach, and injury, draw on common law principles[.]" *Thompson v. Oceania Cruises, Inc.*, No. 15-20484-CIV-More, 2015 U.S. Dist. Lexis 181531, at *3–4 (S.D. Fla. Oct. 13, 2015).  The employer and seaman are held to the same standard of care and they are both obligated to act with ordinary prudence. *Id*. at *3–4.  The Jones Act does not hoist a duty upon an employer to completely resolve an alleged injury suffered by a seaman. *Farrell v. United States*, 336 U.S. 511, 519 (1949) (providing that shipowner not responsible for palliative medical care for seaman's permanent injury); *Vaughan v. Atkinson*, 369 U.S. 527, 536

---

[12] Defendant's Letter to Dr. Roberti dated Aug. 9, 2019, Exhibit A in Defendant's Response to Plaintiff's Statement of Facts, ECF No. 51-1, p. 2.

(1962) ("the duty does not extend beyond the seaman's need.") (*citing Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 531 (1938)).  The Jones Act requires an employer to provide medical care until such time as a seaman reached maximum medical improvement and maximum medical improvement does not mean the seaman will be in the condition the seaman was in prior to the injury. *Jackson v. NCL Am., LLC*, No. 19-25115-Civ, 2020 U.S. Dist. Lexis 87346, at *2 n.4 (S.D. Fla. May 14, 2020) (*citing Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1979)); *Tern Shipholding Corp. v. Rockhill*, No. 5:04cv381-RS-EMT, 2006 U.S. Dist. Lexis 43319, at *12-13 (N.D. Fla. June 27, 2006) (finding seaman reached maximum medical care and stating that seaman's treating physicians "are invaluable" when "determining whether a seaman has reached maximum cure"). While the causation standard is relaxed, the Jones Act "does not make the employer the insurer of the safety of his employees while they are on duty.  The basis of his liability is his negligence, not the fact that injuries occur." *Id*. (*quoting Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 543, 114 S. Ct. 2396, 129 L. Ed. 2d 427 (1994)).  To establish causation in a negligence case like the case at bar, the plaintiff must present expert testimony which reasonably connects the alleged negligence and the subsequent injury. *Drury v. Cardiac Pacemakers, Inc.*, No. 8:02-CV-933-T-17MAP, 2003 U.S. Dist. Lexis 24887, at *8 (M.D. Fla. June 3, 2003); *Gowdy v. Marine Spill Response Corp.*, 925 F.3d 200, 206 n.2 (5th Cir. 2019) ("a medical expert must be able to articulate that there is more than a mere possibility that a causal relationship exists between the defendant's negligence and the injury for which the plaintiff seeks damages") (*citing Mayhew v. Bell S.S. Co.*, 917 F.2d 961, 963 (6th Cir. 1990)); *Thomas v. Nelson Marine Serv.*, No. 07-0146-CG-C, 2008 U.S. Dist. Lexis 13603, at *9 (S.D. Ala. Feb. 21, 2008) (same).  "An expert witness must be able to state an opinion, based on a reasonable degree of medical certainty, that the defendant's negligence is more likely tha[n] anything else to have been the cause of plaintiff's injuries." *Drury*,

2003 U.S. Dist. Lexis 24887 at *8; *O'Brien v. NCL (Bahamas) Ltd.*, 288 F. Supp. 3d 1302, 1312 (S.D. Fla. 2017).

Here, Plaintiff Dozer claims that his right foot drop resulted due to a delay on the part of Defendant CoKa Ventures in providing medical care for a back injury he sustained on Friday, July 12, 2019.[13]   That said, however, the record evidence indisputably shows that Plaintiff Dozer suffered from a right foot drop days ***before*** reporting the same to Defendant CoKa Ventures.   More specifically, in deposition, Plaintiff testified that he began experiencing "numb[ness]" and pain in his right leg as early as Sunday, July 14, 2019.[14]   Defendant CoKa Ventures did not learn of Plaintiff's alleged back injury until Monday, July 15, 2019.[15]   Plaintiff did not advise Defendant of his desire to seek medical care until July 18, 2019.[16]   On July 24, 2019, family friend and nurse practitioner Amber Rule, ARNP, evaluated Plaintiff and found that "he has a right foot drop."[17] Then, on July 31, 2019, Plaintiff Dozer's treating physician Dr. Roberti reported that Plaintiff had been experiencing "right leg pain" for "3 weeks" making the onset date around July 12, 2019.[18]   It was not until July 31, 2019 that Defendant learned that back decompression surgery was recommended to Plaintiff.   Accordingly, there can be no dispute that Plaintiff's right foot drop was not the result of an alleged delay on the part of Defendant CoKa Ventures in providing medical care for his back injury.

Moreover, Plaintiff Dozer cannot show that Defendant CoKa Ventures breached a duty of care owed to him.   That is, Plaintiff cannot show that Defendant failed to act with ordinary

---

[13] Verified Amended Complaint, ECF No. 23, ¶¶ 54, 74–78.
[14] Depo. Trans. of Plaintiff Dozer, ECF No. 46-1, p. 10, Depo. p. 35, line 18 to p. 36, line 19.
[15] Depo. Trans. of Plaintiff Dozer, ECF No. 46-1, p. 10, Depo. p. 35, lines 18 to 22.
[16] Text Message among Plaintiff and Defendant, ECF No. 42-3, p. 2.
[17] Amber Rule, ARNP, Note dated July 24, 2019, ECF No. 42-6, p. 2.
[18] Dr. Roberti's Progress Note dated July 31, 2019, ECF No. 42-8, p. 2.

prudence under the circumstances which led to Plaintiff's alleged injuries. *See Thompson v. Oceania Cruises, Inc.*, No. 15-20484-CIV-More, 2015 U.S. Dist. Lexis 181531, at *3–4 (S.D. Fla. Oct. 13, 2015); *Gautreaux v. Scurlock Marine*, 107 F.3d 331, 335 (5th Cir. 1997) (stating that "[t]he duty of care owed . . . retains the usual and familiar definition of ordinary prudence."); *Thomas v. Nelson Marine Serv.*, No. 07-0146-CG-C, 2008 U.S. Dist. Lexis 13603, at *13 (S.D. Ala. Feb. 21, 2008) (finding that Jones Act plaintiff "failed to show that defendants were negligent, or that their negligence caused plaintiff's injury"). Here, Defendant CoKa Ventures immediately began investigating Plaintiff's back injury claim upon learning of the same. At no point did Defendant CoKa Ventures conduct a lax investigation of Plaintiff's claim; rather, Defendant advised Plaintiff that it agreed to pay for all medical expenses pertaining to Plaintiff's back injury on August 9, 2019.[19] In fact, to date, Defendant CoKa Ventures has paid Plaintiff maintenance and cure, including the costs of the surgery, physical therapy, diagnostic examinations, pain management and pain medications.[20] Notably, as detailed in Defendant's *Daubert* Motion (ECF No. 47), neither of Plaintiff's treating physicians can opine on the timeframe within which Plaintiff should have undergone decompression surgery to reverse and/or reduce his alleged current injuries. Both Dr. Roberti and Dr. Uribe testified in deposition that they cannot cite any medical literature for the proposition that Plaintiff Dozer's pre-existing foot drop and back pain would be permanent if surgery was not performed within eight weeks of the injury.[21] In fact, Dr. Roberti's Progress Note dated July 31, 2019 specifically states that he did not guarantee a resolution of

---

[19] Defendant's Letter to Dr. Roberti dated Aug. 9, 2019, ECF No. 51-1, p. 2.
[20] Compilation of Cure Payments, ECF No. 46-9, pp. 2–102; Compilation of Maintenance Payments, ECF No. 46-11, pp. 2–30.
[21] Depo. Trans. of Dr. Roberti, ECF No. 46-6, pp. 8, 16, 17, 19, 20; Depo. Trans. of Dr. Uribe, ECF No. 46-10, pp. 10–11, Depo. pp. 33–34.

Plaintiff's conditions even if the surgery was successful.[22]   In deposition, Dr. Uribe repeatedly made the point that each patient's case is different so it is difficult to draw conclusions from other patients' experiences.[23]   It is therefore axiomatic that Plaintiff cannot establish an alleged failure to provide prompt medical care to Plaintiff which lead to his alleged injuries under the circumstances.

Lastly, Plaintiff Dozer cannot produce any evidence showing that Defendant's conduct delayed his surgery and caused Plaintiff's current physical injuries. Regarding the alleged delay Plaintiff attempts to highlight in his motion for summary judgment, it is clear that any alleged delay in receiving his surgery had multiple inputs that did not involve Defendant's alleged conduct. For example, at his first visit with Dr. Roberti on July 31, 2019, Plaintiff Dozer elected to "think about the option" to have the back-decompression surgery even though Dr. Roberti recommended that surgery be performed "as soon as possible."[24]   In fact, Plaintiff waited until August 7, 2019 to elect to undergo surgery.   On August 9, 2019, within two days of electing to undergo surgery, Defendant agreed to pay for Plaintiff's surgery, but Dr. Roberti and/or the hospital did not accept the payment guarantee from Defendant.   On August 19, 2019, after finding out the hospital required pre-payment for the surgery for the first time, Defendant's insurance carrier executed an Agreement Statement wherein it guaranteed payment of Plaintiff's medical care.   Defendant paid for Plaintiff's surgery on September 10, 2019, but the hospital did not elect to schedule the surgery on September 18, 2019.   Given the above, though there is no reliable medical evidence that the

---

[22] Dr. Roberti's Progress Note dated July 31, 2019, ECF No. 42-8, pp. 2–3; Depo. Trans. of Dr. Roberti, ECF No. 46-6, pp. 16–17.
[23] Depo. Trans. of Dr. Uribe, ECF No. 46-10, p. 13, Depo. p. 43.
[24] Dr. Roberti's Progress Note dated July 31, 2019, ECF No. 42-8, p. 2–3.

alleged delay affected the outcome of the surgery, it is clear that Defendant acted appropriately and any alleged delay involved multiple entities/things outside of Defendant's control.

Further, the record evidence indisputably shows that there is no causal connection between the alleged delay in undergoing surgery post-injury and Plaintiff's alleged permanent foot drop and back pain. As detailed above and throughout the record evidence, Plaintiff had symptoms of right foot drop within two (2) days of hurting his back on July 12th. Plaintiff's medical experts Dr. Roberti and Dr. Uribe opine that there was no guarantee that any surgery would completely resolve Plaintiff's pre-existing symptomatology of foot drop and back pain.[25] And, although given multiple opportunities, neither of Plaintiff's treating physicians could opine within a reasonable degree of medical certainty that the delay of undergoing back decompression surgery caused or exacerbated Plaintiff's alleged current foot drop and back pain.

This Court has held that in order to prove causation a plaintiff's expert witness must testify "based on a reasonable degree of medical certainty, that the defendant's negligence is more likely tha[n] anything else to have been the cause of plaintiff's injuries." *O'Brien v. NCL (Bahamas) Ltd.*, 288 F. Supp. 3d 1302, 1312 (S.D. Fla. 2017); *see also Zukowski v. Foss Mar. Co.*, 2013 U.S. Dist. Lexis 66866 (S.D. Ala. 2013) (entering summary judgment in favor of defendant since plaintiff's medical experts could not opine "within a reasonable degree of medical certainty" regarding the onset date of plaintiff's back injury); *Gowdy v. Marine Spill Response Corp.*, 925 F.3d 200, 206 n.2 (5th Cir. 2019) ("a medical expert must be able to articulate that there is more than a mere possibility that a causal relationship exists between the defendant's negligence and the

---

[25] *See* Depo. Trans. of Dr. Roberti, ECF No. 46-6, pp. 16-18; Dr. Roberti's Progress Note dated July 31, 2019, ECF No. 42-8, p. 3; Depo. Trans. of Dr. Uribe, ECF No. 46-10, p. 10.

injury for which the plaintiff seeks damages") (*citing Mayhew v. Bell S.S. Co.*, 917 F.2d 961, 963 (6th Cir. 1990)).

*Zukowski v. Foss Mar. Co.*, 2013 U.S. Dist. Lexis 66866 (S.D. Ala. 2013) is instructive. In *Zukowski*, a sailor injured his back while pulling a cable aboard his employer's vessel. *Id*. at *2. The day after injuring his back, on September 11, 2008, the sailor submitted an injury report to his employer. *Id*.  Fourteen days after the date of injury, on September 24, 2008, the sailor sought medical treatment. *Id*.  Plaintiff received maintenance and cure between the date of injury, September 10th, and the date determined to be at maximum medical improvement, on November 11, 2008. *Id*. at *3.  While the *Zukowski* sailor's medical doctors opined that his lumbar strain with spasms and underlying disc herniations at L3-4 and L4-5 were "more probable than not, caused and/or made symptomatic by the September 10, 2008 accident at issue," an independent examination determined that "there is no way to determine, within a reasonable degree of medical certainty, whether [sailor's] complaints of back pain were a result of the September 2008 accident[.]" *Id*. at *6.  The court granted summary judgment in favor of the employer, finding that the employer reasonably investigated the sailor's injury based on the information in hand and did not act arbitrary and capricious in denying maintenance and cure to the sailor. *Id*. at *20–24.

Based on the foregoing, and as discussed in detail in Defendant's *Daubert* Motion, Plaintiff Dozer cannot carry his burden in this matter as Plaintiff's experts merely rely on anecdotal experiences in rendering their opinions.  Therefore, because Plaintiff's experts cannot opine within a reasonable degree of medical certainty that Plaintiff's alleged permanent foot drop and back injury were caused and/or exacerbated by the time between the day Plaintiff sustained his injuries on July 12th and the day he underwent back surgery on September 18th, this Court should find that Defendant CoKa Ventures cannot be held liable for Plaintiff's alleged injuries.

Accordingly, because Plaintiff cannot show that Defendant CoKa Ventures was negligent in the handling of his drop foot and back injury claim, the Court should deny Plaintiff's Motion and grant summary judgment in favor of Defendants.

**WHEREFORE**, Defendant, CoKa Ventures, LLC, respectfully requests the Court to deny Plaintiff's Motion for Partial Summary Judgment (ECF No. 41), to grant Summary Judgment in favor of Defendants on all claims, dismiss Plaintiff's Verified Amended Complaint (ECF No. 23) with prejudice, and grant any other relief this Court deems just and proper.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via E-mail to Counsel listed below on December 11, 2020.

Respectfully submitted:

**BROWN SIMS**
*Attorneys for the Defendant*
4000 Ponce de Leon Blvd.
Suite 630
Coral Gables, FL 33146
(305) 274-5507 – Office
(305) 274-5517 – Fax
<u>mgreen@brownsims.com</u>
<u>cfrank@brownsims.com</u>

By: */s/ Marlin K. Green*
    **MARLIN K. GREEN, ESQ.**
    Florida Bar No. 419532
    **CODY L. FRANK, ESQ.**
    Florida Bar No. 124100

**SERVICE LIST**

**James W. Stroup, Esq.**
Florida Bar No. 0842117
**Farris J. Martin, III, Esq.**
Florida Bar No. 0879916
STROUP & MARTIN, P.A:
119 Southeast 12th Street
Fort Lauderdale, Florida 33316
Tel: (954)-462-8808
Fax: (954)-462-0272
jstroup@strouplaw.com
fmartin@strouplaw.com
*Attorneys for Plaintiff*